UNION NATIONAL LIFE INSURANCE COMPANY Plaintiff

v.

**Tracy M. TILLMAN Defendant**

**No. 100CV211–D–D.**

United States District Court, N.D. Mississippi, Eastern Division.

Aug. 28, 2000.

---

5. The permanent injunction request is moot and likewise DISMISSED.

Arthur F. Jernigan, Jr., Watson & Jernigan, P.A., Jackson, MS, for counterdefendant.

Jim D. Waide, III, Waide & Associates, PA, Tupelo, for counterclaimant.

## OPINION

DAVIDSON, District Judge.

Presently before the court is the Plaintiff's motion for preliminary injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure. Upon due consideration, the court finds that the motion should be granted.

### A. Factual Background

The Defendant, Tracy Tillman (Tillman), was employed by the Plaintiff, Union National Life Insurance Company (Union National), as an insurance salesman from January 29, 1990, until December 31, 1999. Upon beginning employment, and on two subsequent occasions, Tillman signed employment contracts that contained non-compete and non-disclosure provisions. When Tillman's employment with Union National was terminated on December 31, 1999, his employment contract contained a provision prohibiting him from selling insurance for one year to his former Union National customers in the areas he serviced as a Union National salesman, comprising parts of Clay and Lowndes Counties in Mississippi. Notwithstanding this, Tillman sold life insurance to some of his former Union National customers in Clay and Lowndes Counties on behalf of his new employer, Mutual Savings Life Insurance Company (Mutual Savings), a competitor of Union National's.

On June 21, 2000, Union National filed this action against Tillman for breach of contract, violation of the Mississippi Uniform Trade Secrets Act (sections 75–26–1 through 75–26–19 of the Mississippi Code) and tortious interference with business relations. On July 7, 2000, Union National filed the current motion seeking preliminary injunctive relief.

### B. Preliminary Injunction Standard

■ In order for the court to grant a preliminary injunction based upon either the breach of contract or tortious interference with business relations claims, Union National must establish the following elements:

(1) a substantial likelihood of success on the merits;

(2) a substantial threat that the plaintiff will suffer irreparable injury if the injunction is denied;

(3) that the threatened injury to the plaintiff outweighs any damage that an injunction might cause the defendant; and

(4) that granting the injunction will not disserve the public interest.

*Canal Auth. of the State of Florida v. Callaway,* 489 F.2d 567, 573 (5th Cir.1974).

■ As for Union National's claim that Tillman violated the Mississippi Uniform Trade Secrets Act, that Act itself authorizes injunctive relief to prevent the actual or threatened misappropriation of trade secrets. Miss.Code Ann. § 75–26–5. As such, to be awarded an injunction under that Act, Union National need not demonstrate irreparable injury; a violation of the

Act itself constitutes irreparable injury. *EEOC v. Cosmair,* 821 F.2d 1085, 1090–91 (5th Cir.1987).

### C. Discussion

#### 1. Tillman's Employment Contract

The employment contract that Tillman signed on January 16, 1998, contains the following provisions:

***CONFIDENTIAL INFORMATION, TRADE SECRETS, AND POLICY-HOLDER LISTS:***

The Company has and/or will disclose to the Field Representative knowledge concerning its trade secrets, business methods and procedures, business accounts, including names of policyholders and insured, personnel records, training and operational manuals, and other materials and matters which are the property of the Company, and which enable the Company to compete successfully in its business. The Field Representative will treat all such materials and matters relating to the Company's business as confidential information and trade secrets entrusted to him/her solely for the use in his/her capacity as Field Representative of the Company, and will not divulge such information or secrets in any way to persons outside of the Company's employ during or after his/her employment. In the event of termination of employment, for any reason, the Field Representative will not, under any circumstances, retain, divulge, or use in any way any information memorized, printed, written or otherwise concerning active or inactive accounts of the company or its method of operation.

***COVENANT NOT TO COMPETE***

Field Representative acknowledges that the Company devotes substantial expense to train Field Representatives in the business of selling insurance, in collecting premiums, in underwriting procedures, and in servicing claims. The Field Representative agrees that for a period of one year from the date of termination of his/her employment with the Company, within the geographical limits of areas serviced by Field Representative for the Company during the twelve months immediately prior to such termination, he/she will not directly or indirectly do any of the following things, or aid or abet others to do so:

1) Solicit, sell, or attempt to solicit or sell any form of life, health or accident insurance or annuities;

2) Contact any Company policyholder, insured, or other person for the purpose of inducing or attempting to induce such policyholder, insured, or other person to cancel, lapse, or fail to renew an insurance policy or contract with the company;

3) Without limitation to geographic area, induce or attempt to induce any Sales Representative, Staff Manager, or District Manager of the Company, or employee of the company's clerical force to terminate employment with the Company, or to solicit or sell life, health, or accident insurance or annuities for any other Company.

The Field Representative further agrees that his/her violation of any part of this covenant may be enjoined by any and all legal or equitable means available to the Company. Field Representative further agrees that he/she will reimburse the company for reasonable attorneys' fees and costs incurred by the Company in enforcing this covenant not to compete.

#### 2. *Canal Authority* Factors

##### a. Substantial Likelihood of Success on the Merits

The primary argument advanced by Tillman regarding Union National's breach of

contract claim is that the employment contract at issue is invalid due to fraud and Tillman's lack of awareness that the contract contained non-compete and non-disclosure provisions. In essence, Tillman claims that Union National misrepresented the contents of the contract and he did not realize what he was signing.

■ While Tillman did notify Union National that he would like further explanation of some of the 1998's contract's terms, he signed employment contracts in 1990 and 1992 that contained near identical non-compete and non-disclosure provisions. For this reason, and given Tillman's years of experience in the insurance industry by 1998, the court finds that Tillman was aware of and fully understood the non-compete and non-disclosure provisions contained in the 1998 contract. No credible evidence has been presented to the court that supports Tillman's contention that he was unaware of those provisions or that he did not understand them. Further, the Mississippi Supreme Court has repeatedly held that "to permit a party when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made or to allow him to admit that he signed it but did not read it or know its stipulations would absolutely destroy the value of all contracts." *Hicks v. Bridges,* 580 So.2d 743, 746 (Miss.1991).

■ As for the enforceability of the contract's non-compete agreement, whether a covenant not to compete is valid and enforceable "is largely predicated upon the reasonableness and specificity of its terms, primarily the duration of the restriction and its geographic scope." *Empiregas, Inc. v. Bain,* 599 So.2d 971, 975 (Miss. 1992); *Taylor v. Cordis Corp.,* 634 F.Supp. 1242, 1247–1250 (S.D.Miss.1986). A court must also examine the covenant's effect on "the rights of the employer, the rights of the employee, and the rights of the pub-

lic," and balance these respective interests. *Texas Road Boring Co. v. Parker,* 194 So.2d 885, 888 (Miss.1967). In Tillman's contract, the time restriction is limited to one year and the geographic scope of the covenant is restricted to parts of a two county area in Northeastern Mississippi, and then specifically only to Tillman's former Union National customers. The brevity of the time restriction, combined with the extremely limited geographic scope of the covenant, leads the court to hold that Union National has met its burden of showing a substantial likelihood that the covenant is enforceable. In fact, the Fifth Circuit recently held that a similar, but even broader, Union National non-compete agreement was enforceable. *Union Nat'l Life v. Smith,* No. 98–60716, 2000 WL 329241 (5th Cir. March 20, 2000). As for Tillman's actual breach of the covenant not to compete, he does not deny that his actions in selling insurance to his former customers violate his contract. As such, the court finds that Union National has met the first *Canal Authority* factor with respect to its breach of contract claim.

■ As for Union National's claim under the Mississippi Uniform Trade Secrets Act (the Act), Union National must show that Tillman misappropriated its trade secrets. Generally, to establish trade secret misappropriation, the complaining party must demonstrate:

1) that a trade secret existed;

2) that the trade secret was acquired through a breach of a confidential relationship or discovered by improper means; and

3) that the use of the trade secret was without the plaintiff's authorization.

*Body Support Sys., Inc. v. Blue Ridge Tables, Inc.,* 1997 WL 560920, at *6 (N.D.Miss. Aug.12, 1997).

■ The Act itself defines misappropriation as, *inter alia,* "use of a trade secret of another without express or implied consent by a person who ... at the time of ... use, knew or had reason to know that his knowledge of the trade secret was ... acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." Miss.Code Ann. § 75–26–3(b). The Act defines a trade secret as "information, including a formula, pattern, compilation, program, device, method, technique or process, that derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Miss.Code Ann. § 75–26–3(d).

While no Mississippi case has explicitly held that information of this precise type constitutes a trade secret under the Act, in *Fred's Stores of Mississippi, Inc. v. M & H Drugs, Inc.,* 725 So.2d 902, 911 (Miss. 1998), the Mississippi Supreme Court held that a pharmacy's master customer list was a trade secret; as such, the court finds that the information at issue here also qualifies.

Tillman does not dispute that he used Union National's trade secrets without permission, rather he simply argues that he was not aware that this information constituted a trade secret, despite the fact that his contract has a paragraph explicitly labeled "Confidential Information, Trade Secrets, and Policyholder Lists." As with the non-compete provision of the contract, the court finds that Tillman was aware of the contract's trade secrets non-disclosure provision and understood it. Further, the court finds that Tillman's knowledge of Union National's trade secrets was ac-

quired as a result of the confidential relationship he had with Union National and, as set forth in the contract's non-disclosure provision, he had a duty to abstain from using those trade secrets in the absence of Union National's authorization. In sum, the court finds that Union National has established a substantial likelihood of success on the merits of its misappropriation of trade secrets claim.

■ Finally, with respect to Union National's claim for tortious interference with business relations, the elements of that claim are as follows:

1) that the defendant knew of the plaintiff's contract;

2) that the defendant's acts were intentional and willful;

3) that they were calculated to cause damage to the plaintiff in its lawful business;

4) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and

5) that actual damage and loss resulted. *Cenac v. Murry,* 609 So.2d 1257, 1268–69 (Miss.1992).

■ The court finds that Union National has not met its burden of establishing a substantial likelihood of success on the merits of this claim. No evidence has been presented to the court tending to support the conclusion that Tillman's actions were calculated to cause damage to Union National in its lawful business or that Tillman's actions were taken with the unlawful purpose of causing damage and loss.

### b. Substantial Threat of Irreparable Injury to the Plaintiff

■ The central inquiry in deciding whether there is a substantial threat of

irreparable harm to the plaintiff is whether the plaintiff's injury could be compensated by money damages. *City of Meridian v. Algernon Blair, Inc.*, 721 F.2d 525, 529 (5th Cir.1983). Union National asserts that Tillman's actions have caused irreparable harm to its customer goodwill, sales, disclosure of confidential information and loss of competitive advantage. Irreparable harm exists "even where economic rights are involved, when the nature of those rights makes establishment of the dollar value of the loss ... especially difficult or speculative." *Allied Mktg. Group, Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 810 (5th Cir.1989). A loss of a business' customers and damage to its goodwill are widely recognized as injuries incapable of ascertainment in monetary terms and may thus be irreparable. *See id.* (affirming district court's holding that damage to goodwill was irreparable because it might be "incapable of calculation"). And, as previously noted, when an injunction is expressly authorized by statute (such as by the Uniform Trade Secrets Act) and the statutory conditions are satisfied, the plaintiff need not establish specific irreparable harm to obtain preliminary injunctive relief. *EEOC v. Cosmair, Inc.*, 821 F.2d at 1090.

Tillman argues that "the temporary, ultimately to be recovered, loss of income does not constitute irreparable injury." *Sampson v. Murray*, 415 U.S. 61, 90, 94 S.Ct. 937, 953, 39 L.Ed.2d 166 (1974). Here, however, it seems clear that the amount of damage Union National has suffered, and will continue to suffer if Tillman's activities are not enjoined, cannot be easily calculated, may be permanent rather than temporary and may not be recovered.

Further, while a specific amount of damages is ultimately awarded in every case, the fact that juries in similar cases have awarded a fixed amount of damages to plaintiffs such as Union National does not mean that Union National cannot establish that a substantial threat of irreparable injury exists. As such, Union National has met its burden and has sufficiently proven that its loss of goodwill, loss of sales, disclosure of its confidential information and loss of its competitive advantage constitute irreparable harm.

### c. Harm to the Plaintiff Versus Harm to the Defendant

█ The threat of injury to Union National clearly outweighs the threat of injury that injunctive relief may cause Tillman. Union National's threat of injury includes loss of goodwill, loss of sales, disclosure of confidential information and loss of competitive advantage. By contrast, granting injunctive relief against Tillman will solely require him to abide by the terms of his agreement; that is, for a one year period, he may not sell life insurance to his previous Union National customers within parts of a two county area nor make use of any of Union National's trade secrets that were revealed to him.

Tillman argues that granting Union National injunctive relief will limit his personal freedom and prevent him from earning a living. These arguments are not persuasive. Tillman agreed to comply with the terms of the enforceable Union National covenant not to compete and non-disclosure agreement; as such, although his personal freedom may be limited for a one year period, he agreed to so limit himself in order to work for Union National. As for Tillman being prevented from earning a living for one year, evidence presented during the court's hearing on this matter showed that the majority of Tillman's current customers are not among his previous Union National customers. The court, therefore, finds that enforcing the employment contract will not cause undue hardship in Tillman's ability to earn a living.

As such, Union National has met its burden of showing that the threat of injury it faces outweighs the threat of injury to Tillman.

### d. Public Interest

 The court finds that Union National has met its burden of establishing that granting the preliminary injunction will not be inconsistent with the public interest. While Tillman asserts that no public interest will be served by granting the injunction and thereby "assisting Union National in its efforts to avoid 'loss of business,'" Union National is not required to show that granting the injunction *will* serve the public interest, only that granting it *will not* disserve the public interest.

To that end, the court finds that the public has an interest in not allowing parties to unilaterally breach binding contracts and disclose trade secrets. Also, the life insurance sales business is apparently quite competitive; not allowing Tillman to sell insurance to his former customers for a one year period, nor to use any of the trade secrets revealed to him by Union National, will not unduly reduce his former customers' choice of life insurance providers. As such, the court finds that Union National has met its burden with respect to this *Canal Authority* element.

In sum, Union National has met the requirements for the issuance of a preliminary injunction in accordance with the factors set forth in *Canal Authority*. As such, the court finds that Union National's motion for preliminary injunction should be granted.

A separate order in accordance with this opinion shall issue this day.

### ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Pursuant to an opinion issued this day, it is hereby ORDERED that

(1) the Plaintiffs' motion for a preliminary injunction (docket entries 2–1, 2–2, 28–1, 28–2) is GRANTED; and

(2) the Defendant is hereby ENJOINED from soliciting, selling or attempting to solicit or sell any form of life, health or accident insurance to any of his former Union National customers until December 31, 2000.

All memoranda, depositions, declarations, and other materials considered by the court in ruling on these motions are hereby incorporated into and made a part of the record in this action.