TOM JAMES CO.

v.

**Mark H. HUDGINS**

**No. CIV.A. 101CV380RO.**

United States District Court, S.D. Mississippi, Southern Division.

March 27, 2003.

J. Robert Ramsay, Matthew D. Miller, Bryant, Clark, Dukes, Blakeslee, Ramsay & Hammond, Hattiesburg, MS, for Tom James Company, plaintiff.

J. Henry Ros, Watkins, Ludlam, Winter & Stennis, P.A., Gulfport, MS, for Mark H. Hudgins, defendant.

## MEMORANDUM OPINION

ROPER, United States Magistrate Judge.

This cause comes before the Court on the Motion of the plaintiff, Tom James Co. ("James"), for Summary Judgment [15–1] pursuant to Rule 56 of the Federal Rules of Civil Procedure. After due consideration of the evidence, the briefs of counsel, the applicable law and being otherwise fully advised in the premises, the Court finds as follows:

### STANDARD OF REVIEW

A grant of summary judgment is appropriate when, viewed in the light most favorable to the nonmoving party "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The moving party initially carries the burden of dem-

onstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Materiality connotes disputes over facts which might affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Further, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

The moving party bears the initial burden of establishing the absence of evidence to support the non movant's cause of action. *Hirras v. National R.R. Passenger Corp.,* 95 F.3d 396, 399 (5th Cir.1996); *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. Should this burden be met by the moving party, the nonmoving party then must establish sufficient facts beyond the pleadings to show that summary judgment is inappropriate. *Exxon Corp. v. Burglin,* 4 F.3d 1294, 1297 (5th Cir.1993). The Court examines applicable substantive law to determine which facts and issues are material. *King v. Chide,* 974 F.2d 653, 655–56 (5th Cir.1992). The nonmoving party must oppose the summary judgment motion either by referring to evidentiary material already in the record or by submitting additional evidentiary documents which set out specific facts indicating the existence of a genuine issue for trial. Fed.R.Civ.P. 56(e). If the opponent fails in his duty, after the Court has viewed the evidence in the light most favorable to the non movant, summary judgment is implicated. *Exxon,* 4 F.3d at 1297. Assertions unsupported by facts are insufficient to oppose a summary judgment motion. *Williams v. Weber Mgmt. Serv., Inc.,* 839 F.2d 1039, 1040 (5th Cir.1987).

## FACTS & ANALYSIS

On January 24, 1997, Mark Hudgins ("Hudgins") sought employment with James as a sales associate. Upon his application for employment with James, he executed a "Nondisclosure of Confidential Information and Trade Secret Agreement" ("Nondisclosure Agreement") (attached as Exhibit 1 to defendant's Motion for Summary Judgment). The Nondisclosure Agreement provides that Hudgins would not disclose trade secrets and confidential information involving price information, customer lists, customer needs, credit reports, and sales techniques developed by James.

In February of 1997, James hired Hudgins, who lacked any prior sales experience, as a made-to-order clothing sales person. (Exhibit 2 to defendant's Motion for Summary Judgment Deposition of Hudgins, p. 14). James provided Hudgins with training as to how to perform his job (*Id.* at ¶ 15–17). He was initially assigned Mobile, Alabama, his home town, as a sales territory. During his employment with James, Hudgins developed new customers along the Mississippi Gulf Coast. Hudgins contends that he was never assigned to the Mississippi Gulf Coast, that he was never provided a list of customers or persons residing along the Gulf Coast, and that he ventured into the Gulf Coast on his own initiative. He identified potential customers by using telephone directories and professional directories. Hudgins admits that, to obtain new clients, he was trained to reveal other prominent James' customers to those new clients in an effort to bolster his credibility and enhance prestige of the product he sold. (*See* Exhibit B, Affidavit of Hudgins).

Prior to his hiring, Hudgins reviewed James's "Conflict of Interest Policy" (attached to Defendant's Motion for Summary Judgment as Exhibit 3). On Feb-

ruary 17, 1997, Hudgins executed an Acknowledgment that he received this policy and that he agreed to comply with its terms. The terms provided that the confidential information he received or obtained while in the employ of James would be held in his confidence and not to be used for his own financial gain in the event his employment with James ended. (*Id.;* Deposition of Hudgins, pp 41–42)

On March 17, 1997, Hudgins entered into an "Employment Agreement" with James. Section 5 of the agreement is entitled "Disclosure of Information" and provides, again, that the salesperson will not disclose confidential information including the employer's customer list. It also provides that the salesperson agrees that during his term of his employment and for two years after his termination of his employment he will not disclose any of the corporation's information or trade secrets. The Agreement provides that:

> In the event of a breach or threatened breach by the salesperson of the provisions of this paragraph, **the employer shall be entitled to an injunction restraining the salesperson from disclosing or using, in whole or in part, such confidential information or trade secrets as have been disclosed or are threatened to be disclosed.**

(*Id.* at Section 5) (emphasis added).

Paragraph 7 of the Employment Agreement provides that for a period of two years after an employee leaves employment with James, he will not engage in any made-to-measure or custom-tailored clothing business that is competitive with James within the geographic boundaries of the sales territory. In paragraph 7, the parties agreed that the present sales territory was defined as the City of Mobile plus fifty miles in every direction from the city boundaries. Further, the Agreement provides that the sales territory may be modified by a written addendum to a different sales territory in the event of a mutually agreed upon transfer. Paragraph 9 of the Employment Agreement provides that if an employee leaves his employment with James and enters into direct competition with James, the salesperson must repay five thousand dollars for the value and cost of training the salesperson.

Hudgins worked for Tom James as a salesperson until August 18, 2000, when he terminated his employment. Upon his termination, it is undisputed that Hudgins returned all of the materials provided to him including the customer lists. On September 6, 2000, Tom James advised Hudgins in writing via certified mail that "the trade secret clauses in your contract are expressly valid and enforceable. Case law supports restrictions on former employees who are engaging in a similar business and who solicit customers of the employers." (*See* Exhibit 5 to Tom James' Motion). Hudgins was further advised in this letter that "the names and all other information about the people on the Mississippi coast who have been identified and developed as Tom James customers are protected trade secrets and the relationships proprietary to our Company. You may not disclose or transfer that information to anyone else nor use the information and relationship for your own benefit." (*Id.*, at ¶ 2). At Paragraph 4 of this letter, Hudgins was advised that "all of the information you have gained about the customers during your employment with the Tom James Company constitutes proprietary information and trade secrets. These are the exclusive property of the Tom James Company and you shall not share that Information with any third party nor should you use any such Information to the detriment of the Tom James Company." (*Id.*).

James learned that Hudgins continued to call upon Tom James' customers along the Mississippi coast after Hudgins termination, in spite of the documents described above, and in spite of the acknowledgment of the Conflict of Interest Policy executed by Hudgins. Hudgins admits that he did call on individuals along the Gulf Coast, but claims that he did not use customer lists because they were returned to James. Hudgins attests that he did not dissuade any James customer not purchase from James's product. In fact, a new James salesperson replaced him after his departure and called on the list of customers he solicited. (Hudgins' affidavit, Exhibit B). Hudgins admits that he made one sale of custom tailored clothing (as well as off the rack clothing not specified in the contract in Mobile, Alabama) after August 18,2000 because he needed the money to pay his family's expenses. Hudgins claims he made no other solicitations or sales within the restricted area.

On March 29, 2001, Tom James, again, advised Hudgins that he was prohibited from using the confidential information and trade secrets disclosed to him during his employment including, but not limited to, customer requirements, sales techniques and methods. (*See* Exhibit 6 to Tom James' Motion). On September 12, 2001, James filed the Complaint in this matter seeking injunctive relief. However, James never specifically filed a motion for preliminary injunction, nor did James call the injunctive nature of this matter to the Court's attention.

On January 27, 2002, James propounded interrogatories and requests for production to Hudgins. On March 20, 2002, Hudgins provided his responses to these discovery requests. (*See* Exhibit 7 to Tom James' Motion). In his answer to Interrogatory No. 2, Hudgins listed, under oath, twenty-six (26) individuals "...who may have been customers or potential customers" of Tom James, and who Hudgins admitted to having solicited and/or sold made-to-fit clothing to on one or more occasions from the time he terminated his employment with Tom James to the present (being March 20, 2002). (*Id.*, Answer to Interrogatory No. 2). In answering Interrogatory No. 5, Hudgins, again under oath, listed the amounts of sales Hudgins made to Tom James customers from August 8, 2000 to March 20, 2002. (*Id.* Answer to Interrogatory No 5). Furthermore, during his deposition conducted on January 20, 2003, Hudgins identified additional persons to whom he sold or from whom he solicited during the period from August 8, 2000 and August 8, 2002, and who were James customers. (See Exhibit "2" to Tom James's Motion, Deposition of Hudgins, pp. 22, 27, 30–39).

Paragraph 13 of the Employment Agreement stipulates that the laws of the State of Alabama shall govern this agreement. However, this sentence is modified later in the paragraph to state that if a salesperson works in more than one state, the applicable laws shall be one of the states in which the salesperson works and the choice of the state law will be at the discretion of the employer. Plaintiff has only cited Mississippi jurisprudence in its brief. Thus, the Court assumes that the choice of law for the plaintiff, employer, is Mississippi. Defendant cites precedence from Georgia, but makes no argument that Alabama law should apply to this matter. Therefore, the Court finds that it is undisputed that Mississippi law applies in this case.

▪ The Mississippi Uniform Trade Secrets Act ("MUTSA") protects trade secrets and allows a party whose trade secrets are being misappropriated to seek an injunction to enjoin actual or threatened misappropriation. Miss.Code Ann. § 75–

26–5. "Trade secret" is defined as information that:

(i) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(ii) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Miss.Code Ann. § 75–26–3(d).

There appear to be only three reported decisions in Mississippi interpreting the applicability and enforce ability of the MUTSA. However, two of these cases, *Fred's Stores of Mississippi, Inc. v. M & H Drugs, Inc.*, 725 So.2d 902 (Miss.1998), and *Union National Life Insurance Co. v. Tillman*, 143 F.Supp.2d 638 (N.D.Miss. 2000), have specifically held that customer lists are indeed trade secrets protected by the MUTSA.

In *Fred's Stores,* the Mississippi Supreme Court first dealt with the applicability of the MUTSA. The court held that this customer list was indeed a protected trade secret. In so holding, the Mississippi Supreme Court went through the two-part analysis defining a "trade secret" as set forth in Miss.Code Ann. § 75–26–3(d). First, the Court determined that the customer list had "economic value," that the information on the list was not information known to the defendant or generally ascertainable by proper means, and that the defendant could obtain economic value from the disclosure of the list. (*Id.* at p. 908–910, ¶¶ 15–21). Next, the Court found that the plaintiff had taken reasonable efforts to maintain its secrecy by putting the information on the list in a computer and protecting it with a password and by carefully monitoring the information. (*Id.* at p. 910–911, ¶¶ 22–28). Hudgins argues that

the customer list was not a protected secret as he was able to provide names on it to potential customers and that the list on the Mississippi Gulf Coast was created by him using professional directories. From these premises, Hudgins urges the conclusion that the names on the customer list could be duplicated from public sources. *Union Savings Amer. Life Ins. v. Cen. Life,* 813 F.Supp. at 481, 494 (S.D.Miss. 1993); *Cataphote Corp. v. Hudson,* 444 F.2d 1313, 1315 (5th Cir.1971).

(1) that a trade secret existed;

(2) that the trade secret was acquired through a breach of a confidential relationship or discovered by improper means; and

(3) that the use of the trade secret was without the plaintiff's authorization.

In *Tillman,* the defendant, a former agent for the plaintiff insurance company, sold life insurance to some of his former customers once his employment with the plaintiff was terminated. The defendant/agent made these sales despite the fact that he entered into an employment contract prohibiting him from doing so for a period of one (1) year following his termination and despite the fact that the customer information he learned while employed with the plaintiff was considered a trade secret. *Tillman,* 143 F.Supp.2d at 641–642. The District Court held that to establish trade secret misappropriation, the complaining party must demonstrate:

*Id.* at 643 (citation omitted).

The Court finds that Tom James's customer list, customer requirements, and sales techniques and methods clearly fall within the definition of "trade secrets" as defined by Miss.Code Ann. § 75–26–3(d), as interpreted by *Fred's Stores* and *Tillman.* The Court also finds that Tom James has taken reasonable efforts to maintain the secrecy of its customer lists,

customer requirements and sales techniques and methods. Hudgins executed three documents, listed as follows: (1) the Nondisclosure Agreement, (2) the Conflict Policy, and (3) the Employment Agreement. All three of these documents advised Hudgins that the corporate information was confidential and was a trade secret of Tom James. (See Exhibits "1", "3", and "4" to Tom James' Motion). Moreover, James wrote Hudgins several times concerning his breach of these agreements after his separation with the Company in an attempt to keep its confidential information, confidential. The Court is not convinced by defendant's argument that the policy of sharing the names of some of James's clients in order to solicit sales compromised the confidentiality of the list.

Further, the Court finds that this specific list of customers, created by Hudgins during the course of his employment, could not be easily duplicated by public directories. The Court finds that all of these steps used by James clearly demonstrate that James has taken reasonable steps to maintain the secrecy of this information, thus meeting the second prong of the "trade secret" definition of Miss.Code Ann. § 75–26–3(d). Moreover, there does not appear to be any question that Hudgins ever provided any trade secret or confidential information to any third party competitor, which would have been clearly in violation of the agreements.

[2] The Court finds that by soliciting and selling made-to-order clothing in the Mobile, Alabama area, Hudgins has breached his employment contract with James and is liable for the provision under the agreement which provides for a refund of the value for the cost of training him as well as attorney's fees and costs for enforcing the agreements. Hudgins admitted that he did not have any knowledge or

experience in the field of selling made-to-fit clothing prior to his employ with James. He also admitted that he developed his customers using the methods taught to him by James during the course of his employment. Thus, when Hudgins sold made to order clothing within the specified geographic area (fifty miles from Mobile City limits in every direction) and within the restricted time period (2 years from date of termination), he clearly violated the restrictive covenant of his employment agreement. (*See* Exhibit "2" to Tom James' Motion, Deposition of Hudgins, pp. 21, 40).

[3] Therefore, the only remaining question is whether Hudgins further breached his agreement by soliciting his former James clients located beyond the contractually defined geographic boundary. Plaintiff suggests that this court answer this question by reading the conflict of interest agreement together with paragraphs five and seven of the employment agreement. The conflict of interest policy acknowledged by Hudgins, states that confidential information shall not be used by the employee except for corporate purposes. This provision makes specific reference to the fact that an employee could not use confidential information for personal gains. Paragraph five of the employment agreement entitled "disclosure of information" defines "confidential information," and specifically prohibits the divulgence of customer lists as confidential information by an employee after termination of his employment for a two year period for any reason. James contends that, in combination, these two contractual provisions dictate that Hudgins breached the agreement by selling to anyone on the customer list, regardless of their geographic location.

[4] Plaintiff alleges that these paragraphs taken in concert with Paragraph

seven of the employment agreement limit the contractual duty not to compete geographically for new customers and established clients, when the agreement states that the former employee shall not engage in:

> any made-to-measure or custom tailored clothing business that is competitive with the business of Employer with the geographical boundaries of the sales territory in which the salesperson calls on, solicits, or deals with customers or is assigned as a Salesperson while employed by the employer. The parties agree that the present sales territory is hereby defined as the following: the city of *Mobile*, ------, plus fifty (50) miles in every direction measured from the city boundaries.

Paragraph seven also contains a provision that expressly allows the parties to modify the contractually defined territory by written agreement. James, however, never exercised this right of modification. The Court finds this geographic limitation applies to the solicitation of new and unknown customers which may be solicited by Hudgins after his separation with the company. Thus, these provisions do not create an ambiguity as the defendant suggests but restrict Hudgins from selling custom clothing to unknown individuals within the fifty mile boundary and to established customers on the list for a two year period following his separation from the company. The Court finds that these provisions are valid as they are reasonable as to the duration of restrictions and geographic scope. *Kennedy v. Metropolitan Life Ins. Co.*, 759 So.2d 362, 364 (Miss. 2000).

The Court finds that Tom James is entitled to summary judgment on its claims that Hudgins breached the three agreements that he signed with Tom James-the Nondisclosure Agreement, the Conflict Policy and his Employment Agreement. The Court finds that there is no dispute that Hudgins has violated the provisions of these agreements. Indeed, he admitted, both in his discovery responses and in his sworn deposition, to soliciting and/or selling to current customers and to potential Tom James customers located within contractually prohibited geographic area. (See Exhibit "7", to Tom James' Motion, Answers to Interrogatories Nos. 2 and 5; and Exhibit "2", Deposition of Hudgins, pp. 22, 27, 30–39). Hudgins' Employment Agreement provides that he is not to use or disclose this confidential information or trade secrets for a period of two (2) years following the termination of his employment. (See Exhibit "4", Section 5, to Tom James' Motion). Both the Nondisclosure Agreement and Employment Agreement provide that, in the event Hudgins misappropriates this information, Tom James is entitled to an injunction restraining Hudgins from using this information. (See Exhibits "1" and "4", Section 5, to Tom James' Motion).

James filed suit in this matter in March of 2001, seeking injunctive relief. However, James never brought this issue before the Court by filing a Temporary Restraining Order or Preliminary Injunction. The Court finds that the two year period provided by the contract has expired and that there is no provision within any of the three agreements which would provide for it to be extended for an additional two years.

The Employment Agreement further states that in the event of a misappropriation of these trade secrets, Tom James is entitled to all costs incurred in enforcing the Agreement, including attorneys' fees and "other remedies." (See Exhibit "4" to Tom James' Motion). There is no question that, under the contract, James should be awarded attorney's fees and costs involved

in bringing this suit as well as a refund of the . costs of training him. However, James's motion is silent as to the nature, type, and amount of remedies except for an extension of the injunction for selling within the geographically defined boundary or to established customers as there are numerous clauses within the contracts which read, "other remedies provided by law"

Therefore, this Court finds that there are no genuine issues of material fact as to defendants' liability. Accordingly, summary judgment should be awarded to the Plaintiff on the issue of liability. However, as to damages, the Court finds there are genuine issues of material fact with regard to the amount of damages owed by Hudgins to Tom James in light of the Court's finding that the agreements and/or contracts in this matter have been breached by Hudgins selling made-to-measure custom tailored clothing within · the fifty mile radius of Mobile, Alabama and selling to established James customers.