UNIFIED BRANDS, INC., Plaintiff

v.

Michael TEDERS; American Equipment Corporation a/k/a and d/b/a American Cook Systems; and Troy Holder, Defendants.

Civil Action No. 3:11–cv–63–WHB–LRA.

United States District Court,
S.D. Mississippi,
Jackson Division.

June 19, 2012.

Jeffrey A. Walker, Charles E. Griffin, Paul Michael Ellis, Butler, Snow, O'Mara, Stevens & Cannada, Ridgeland, MS, for Plaintiff.

Julie Jarrell Gresham, Taylor B. McNeel, Brunini, Grantham, Grower & Hewes, PLLC, Biloxi, MS, Stephen J. Carmody, Brunini, Grantham, Grower & Hewes, James D. Holland, Page, Kruger & Holland, P., Jackson, MS, for Patrick G. Murphy, Barrett & McNagny, LLP, Fort Wayne, IN, for Defendants.

### *OPINION AND ORDER*

WILLIAM H. BARBOUR, JR., District Judge.

This cause is before the Court on the Motion of Defendants, American Equipment Corporation a/k/a and d/b/a American Cook Systems and Troy Holder, to Dismiss, which is brought pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. Having considered the pleadings as well as supporting and opposing authorities, the Court finds the Motion is not well taken and should be denied.

## I. Factual Background and Procedural History

Plaintiff, Unified Brands, Inc. ("Unified"), is a company engaged in the manufacturing and marketing of food service equipment. In 2010, Unified purchased a company named Intek. At or around the same time as the purchase, Michael Teders ("Teders"), who had then been an executive of Intek, entered an employment contract with that company. The purported purpose of the contract was to retain Teders's services to both Intek and Unified during the purchase period, as well as during the ensuing period of transition. According to Unified, the employment contract Teders entered with Intek contained a post-restrictive covenant under which he was prohibited from working for any enterprise that engaged in the sale or production of steam cooking equipment for one year.

In August of 2010, Teders began working for Unified as its National Sales Manager. In conjunction with this position, Unified and Teders entered another employment contract under which Teders agreed to maintain the confidentiality of certain business information belonging to Unified for a two-year period following the termination of his employment. Teders also agreed, that for a one-year period following termination, he would not: (1) work for any competitor of Unified and/or Intek; (2) solicit existing customers or active prospects of Unified and/or Intek; and (3) solicit or accept business from any present customer of Unified with which he had contact, or about which he had received information, from Unified.

Unified alleges that in December of 2010, Teders "secretly negotiated" and agreed to accept an employment and/or ownership contract with Defendant, American Equipment Corporation a/k/a and d/b/a American Cook Systems ("AEC"), and with its principal owner, Troy Holder ("Holder"). AEC is identified as a competitor company, which is engaged in the production and sale of commercial steam cooking equipment. Unified further alleges that before announcing his resignation, Teders accessed a laptop computer that had been provided to him by Unified, and downloaded a substantial amount of its sensitive and confidential business information, including pricing information and customer lists. Finally, Unified alleges that after becoming associated with AEC, Teders "solicited, suggested and otherwise encouraged" both its customers and those of Intek to do business with AEC, instead of Unified, in direct violation of the employment contracts he had entered with Unified and Intek.

In February of 2011, Unified filed a lawsuit against Teders in this Court, and an Amended Complaint was later filed by which AEC and Holder were named as additional defendants. Relevant to the matters currently before the Court, the Amended Complaint alleges the following claims against AEC and Holder: violations of the Computer Fraud and Abuse Act ("CFAA"), specifically 18 U.S.C. §§ 1030(a)(2), 1030(a)(4), and 1030(a)(5);[1] misappropriation of trade secrets; tortious interference; and negligent supervision. AEC and Holder have now moved for the dismissal of the Amended Complaint, as alleged against them, on the grounds of lack of personal jurisdiction and/or for failure to state a claim upon which relief may be granted.

1. As Unified has alleged violations of the CFAA, the Court may properly exercise subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1331, and may exercise supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367. The Court may also exercise subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as the parties are diverse, and the amount in controversy is claimed to exceed $75,000.

## II. Discussion

### A. Motion to Dismiss for Lack of Personal Jurisdiction

■ Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a lawsuit may be dismissed for lack of personal jurisdiction. "When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Jobe v. ATR Mktg., Inc.*, 87 F.3d 751, 753 (5th Cir.1996). A plaintiff satisfies this burden "by presenting a prima facie case for personal jurisdiction." *Colwell Realty Invs., Inc. v. Triple T Inns of Az., Inc.*, 785 F.2d 1330, 1333 (5th Cir. 1986). When considering whether the plaintiff has met its burden, the "allegations contained in the complaint, except insofar as controverted by opposing affidavits, must be taken as true." *Id.* Thus, the Court may consider matters outside the complaint, including affidavits, when determining whether personal jurisdiction exists. *Jobe*, 87 F.3d at 753.

■ In the case *sub judice*, federal subject matter jurisdiction is based on both 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1332 (diversity). Regardless of the statute under which subject matter jurisdiction is exercised, the personal jurisdiction analysis would be the same. The rationale for this conclusion is that in cases in which federal subject matter jurisdiction is based on a federal question, the Court must first look to the service of process provisions of the statute giving rise to the federal question. *See e.g. Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 105–06, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987). When the federal statute is silent with regard to service of process, as with the CFAA here, a federal court may exercise personal jurisdiction "over only those defendants who are subject to the jurisdiction of courts of the state in which the court sits." *Point Landing, Inc. v. Omni Capital Int'l, Ltd.*, 795 F.2d 415, 419 (5th Cir.1986). *See also DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1266 (5th Cir.1983) (explaining: "[W]hen a federal question case is based upon a federal statute that is silent as to service of process, and a state long-arm statute is therefore utilized to serve an out-of-state defendant, Rule 4(e) [of the Federal Rules of Civil Procedure] requires that the state's standard of amenability to jurisdiction apply."). Accordingly, the Court applies the personal jurisdiction analysis used in diversity of citizenship cases to both the federal as well as state law claims alleged by Unified.

■■ In diversity of citizenship cases, the issue of whether a court can exercise personal jurisdiction over a nonresident defendant is determined under a two-step analysis. *Jobe*, 87 F.3d at 753. "First, the law of the forum state must provide for the assertion of such jurisdiction; and, second, the exercise of jurisdiction under state law must comport with the dictates of the Fourteenth Amendment Due Process Clause." *Id.* As regards the first step, the Mississippi Long Arm Statute permits the exercise of personal jurisdiction over nonresident persons and business entities: (1) that have made a contract with a Mississippi resident that is to be performed in whole or in part by any party in Mississippi; (2) that have committed a tort in Mississippi; and/or (3) who do business or perform any character of work or service in Mississippi. *See* Miss.Code Ann. § 13–3–57.

■ Unified argues that AEC and Holder are subject to personal jurisdiction under the tort prong of the Mississippi long arm statute. In cases in which personal jurisdiction is predicated on the commission of a tort:

> [T]he jurisdictional question involves some of the same issues as the merits of the case, and the plaintiff must make a

prima facie case on the merits to withstand a motion to dismiss under Rule 12(b)(2). In such a case, of course, it is not enough to establish prima facie that a tort has occurred. Because the plaintiff bears the burden of establishing jurisdiction, he must also make a prima facie showing that the tort occurred within the state.

*Wyatt v. Kaplan,* 686 F.2d 276, 280 (5th Cir.1982) (alterations in original) (citations omitted).

 Here, Unified argues that personal jurisdiction may be exercised over AEC and Holder based on its tortious interference claim. With regard to this claim, the Amended Complaint alleges that "AEC and Holder intentionally interfered with Unified's existing and advantageous business relationships with Teders" and that, as a result of this interference, "Unified has sustained, and continues to sustain, irreparable injury to its business, substantial lost revenues, and the loss of prospective advantageous business relationships and accounts." *See* Am. Compl.

at ¶¶ 100, 101.[2] It is without question that Mississippi recognizes the claim of tortious interference with a business relationship, which "occurs when a person unlawfully diverts prospective customers away from one's business." *Par Indus., Inc. v. Target Container Co.,* 708 So.2d 44, 48 (Miss. 1998). *See also Cenac v. Murry,* 609 So.2d 1257, 1268 (Miss.1992) (explaining that tortious interference with business relationships occurs "when a wrongdoer unlawfully diverts prospective customers away from one's business thereby "encouraging" customers to trade with another."). The elements necessary to prove such claim are: "(1) the acts were intentional and willful; (2) the acts were calculated to cause damage to the plaintiffs in their lawful business; (3) the acts were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) actual damage and loss resulted." *MBF Corp. v. Century Bus. Commc'ns, Inc.,* 663 So.2d 595, 598 (Miss.1995) (alterations in original).[3]

2. The Amended Complaint alleges that AEC and Holder interfered with the business relationship Unified had with Teders, which was presumably based, in part, on his employment contracts and the confidentiality/non-compete agreements contained therein. Any uncertainty regarding whether the Amended Complaint also alleged that AEC and Holder had tortiously interfered with the business relationships Unified had with its current and/or prospective customers, outside of Teders's involvement, has been dispelled by its Response to the Motion to Dismiss. *See* Resp. [Docket No. 43], 5 (arguing that the "claim for tortious interference arises from and relates to the Defendants interfering with an employment contract and business relationship centered in Mississippi."); *id.* at 10 ("Here, Unified Brands' claims involve ... Defendants' tortious interference with a Mississippi business relationship between Unified Brands ... and Teders.").

3. AEC and Holder have argued that a claim for tortious interference with business relationship cannot "arise simply by hiring the

employee of a competitor." Rebuttal [Docket No. 46], at 17. The pleadings in this case, however, suggest that AEC and Holder may have done more than simply hire a competitor's employee. *See infra* at 580–81 (evidencing that, at the time Teders was still employed with Unified and actively negotiating his future employment with AEC and/or Holder, he was: (1) making calls to his contacts, and had already garnered "interest from people who would help [them] get a jump start on sales"; (2) "going to bring a lot of contacts" that AEC and/or Holder would have to call on because he could not due to his non-compete agreement; and (3) meeting with prospective clients and giving their information to AEC and/or Holder so they could "get in on it."). Based on this evidence, the Court finds that a plausible tortious interference with business relationship claim exists. *See e.g. MBF Corp.,* 663 So.2d at 599 (finding there was sufficient evidence to support a tortious interference with business relationship claim in a case in which the evidence showed that the defendant, through its later-hired employees, had

The Court finds the allegations in the Amended Complaint are sufficient to establish a prima facie showing that the tortious interference claim was committed, at least in part, in Mississippi because this is the state in which the alleged damage and loss occurred. *See Allred v. Moore & Peterson,* 117 F.3d 278, 282 (5th Cir.1997) (explaining that "[u]nder the tort prong of the Mississippi long-arm statute, personal jurisdiction is proper if any element of the tort (or any part of any element) takes place in Mississippi."). Although AEC and Holder correctly argue that "consequences stemming from [an] actual tort injury do not confer personal jurisdiction at the site or sites where such consequences happen to occur," *see id.* at 281, the Court finds that the loss and damages alleged by Unified in this case are not mere consequences of a tort having occurred elsewhere. With a claim of tortious interference with business relationship, the Mississippi Supreme Court has recognized that loss and damages include the injured party's expectancies of future contractual relationships and the opportunity of obtaining customers. *See Cenac,* 609 So.2d at 1270. *See also MBF Corp.,* 663 So.2d at 599–600 (finding that the plaintiff had made a prima facie case on the issue of damages with respect to a tortious interference of business relationship claim by showing that its profits and customer trade had sharply diminished, that it had incurred a decline in net income, and that the defendant's actions had interfered with its "entire business and its customer base."). Here, a loss of profits and prospective contracts as well as a loss of income would necessarily occur in Mississippi as the principal place of business for Unified. Accordingly, the Court finds Unified has made a prima facie showing that the tort prong of the Mississippi Long Arm Statute would provide for the exercise of personal jurisdiction over AEC and Holder on the tortious interference with business relationship claim.

The second step of the personal jurisdiction analysis considers whether the exercise of such jurisdiction under state law would comport with the dictates of the Fourteenth Amendment Due Process Clause. This Clause "permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Alpine View Co. Ltd. v. Atlas Copco AB,* 205 F.3d 208, 214–15 (5th Cir.2000) (alterations in original) (citations omitted). Minimum contacts, for the purpose of satisfying due process, "can be established either through contacts sufficient to assert specific jurisdiction, or contacts sufficient to assert general jurisdiction." *Id.* at 215. "Specific jurisdiction over a nonresident ... is appropriate when that [nonresident] has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Id.* (alterations in original) (citations omitted). General jurisdiction "attach[es] where the nonresident defendant's contacts with the forum state, although not related to the plaintiff's cause of action, are continuous and systematic." *Id.* (alterations in original) (citations omitted).

Unified argues that the due process minimum contacts requirement is

taken files containing "vital information" regarding the plaintiff's customer base, had hired two of its key salesmen, and had the later-hired employees divert potential customers to it at the time they were still employed by the plaintiff).

satisfied based on specific jurisdiction. Courts have found that a single act that is directed at the forum may be sufficient to confer specific jurisdiction if the act gives rise to the plaintiff's cause of action. *See e.g. Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.,* 9 F.3d 415, 419 (5th Cir. 1993). Further, under *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), the exercise of specific jurisdiction may be proper in cases in which a defendant engages in intentional conduct that is calculated to cause injury in the forum state. In this Circuit, the analysis of *Calder's* 'effects' test, as applied to tortious interference claims, requires a determination of "whether the alleged tortfeasor expressly aimed his out-of-state conduct at the forum state by examining the nexus between the forum and the injured contractual relationship." *Mullins v. TestAmerica, Inc.,* 564 F.3d 386, 402 (5th Cir.2009).

▆▆▆ Here, the nexus between Mississippi and the allegedly injured business relationship appears to be the employment contracts that existed between Unified and Teders. *See* Am. Compl. at ¶¶ 23–41 (Unified alleging that AEC and Holder tortiously interfered with its business relationships with Teders, which was based, at least in part, on the employment contracts he had entered with Unified). It is undisputed that this contract is governed by Mississippi law. *See* Am. Compl., Ex. 2 (Employment Agreement), ¶ 15 (providing: "This Agreement shall be interpreted, construed, applied and enforced in accordance with the laws of the State of Mississippi, regardless of . . . (c) where any breach of any provision of this Agreement occurs or any cause of action otherwise accrues . . ."). It is also clear from the pleadings that AEC and Holder had knowledge of Teders's employment contract with Unified, and that the contract contained a non-compete agreement. *See e.g.* Resp. [Docket No. 43], Ex. A (Holder Dep.) at Dep. ex.

1 (e-mail dated Nov. 23, 2010). Finally, the pleadings show that the harm caused by the alleged tortious interference was directed at Unified, which has its principal place of business in Mississippi. For example, Unified has presented e-mail communications between Teders and Holder showing that, at the time Teders was still employed with Unified and actively negotiating his future employment with AEC and/or Holder, he was: (1) making calls to his contacts, and had already garnered "interest from people who would help [them] get a jump start on sales"; (2) "going to bring a lot of contacts" that AEC and/or Holder would have to call on because he could not due to his non-compete agreement; and (3) meeting with prospective clients and giving their information to AEC and/or Holder so they could "get in on it." *Id.* Based on this evidence, the Court finds the tortious interference alleged by Unified in the Amended Complaint would necessarily affect (1) the use of proprietary information and trade secrets, (2) the soliciting of new and existing customers, and, ultimately, (3) the profits of Unified, all of which occurred in Mississippi as its principal place of business. Accordingly the Court finds the contacts in this case are sufficient to establish a prima facie showing of specific jurisdiction thereby satisfying the due process requirement of the personal jurisdiction analysis.

▆▆▆ Having found Unified has made a prima facie showing that AEC and Holder are subject to personal jurisdiction under the tort prong of the Mississippi Long Arm Statute and that there are sufficient contacts to satisfy the Fourteenth Amendment due process requirements, the Court next considers whether the exercise of personal jurisdiction would be unfair or unreasonable. The burden of showing unreasonableness must be carried by the party challenging personal jurisdiction,

and that party must make a "compelling case" against its being exercised. *Wien Air Alaska, Inc. v. Brandt,* 195 F.3d 208, 215 (5th Cir.1999) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Generally, it is rare to find that the assertion of personal jurisdiction "is unfair after minimum contacts have been shown." *Id.* (citing *Akro Corp. v. Luker,* 45 F.3d 1541, 1549 (Fed.Cir.1995)). To determine whether the exercise of personal jurisdiction would be unreasonable, the Court applies the standards of "traditional notions of fair play" and "substantial justice", and balances the following interests: "the burden on the defendant having to litigate in the forum; the forum state's interests in the lawsuit; the plaintiff's interests in convenient and effective relief; the judicial system's interest in efficient resolution of controversies; and the state's shared interest in furthering fundamental social policies." *Id.*

■ Having balanced the interests, the Court finds the exercise of personal jurisdiction over AEC and Holder in this case would not be unreasonable. Although AEC and Holder argue that it would be a great burden to defend a lawsuit in Mississippi because they did not purposefully direct activities into this state, the Court has previously found that Unified presented sufficient evidence to make a prima facie showing that they had indeed directed activities into Mississippi. The activities, as discussed above, include the tortious interference with a business relationship that existed between Teders and Unified in Mississippi as well as the alleged use of proprietary information belonging to Unified, the solicitation of existing and potential customers away from Unified, and the tortious interference with the customer base and profits of Unified, all of which were directed into Mississippi as the principal place of its business. The Court additionally finds Mississippi would

have a significant interest in this case as it is alleged that AEC and Holder tortiously interfered with a business within her borders; Unified has an interest in litigating in Mississippi as it is its principal place of business and it provides the law governing its dispute with Teders; and there are no issues implicating interests of the interstate judicial systems or the furthering of social policies.

■ In sum, the Court finds Unified has satisfied its burden of making a prima facie showing that this Court may properly exercise personal jurisdiction over AEC and Holder in this case, and that the exercise of personal jurisdiction would not be unreasonable. The Court emphasizes, however, that while the prima facie showing made by Unified is sufficient to survive a personal jurisdiction challenge at this stage of the proceedings, it does not dispose of the jurisdictional issue. As explained by the Fifth Circuit:

> Where [a personal] jurisdictional issue is ruled on motion prior to trial and without a full evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdiction, so that the allegations of the complaint are taken as true except as controverted by the defendant's affidavits and conflicts in the affidavits are resolved in the plaintiff's favor. However, at any time when the plaintiff avoids a preliminary motion to dismiss by making a prima facie showing of jurisdictional facts, he must still prove the jurisdictional facts at trial by a preponderance of the evidence, or, as otherwise stated, eventually, of course, the plaintiff must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at a trial. Whatever degree of proof is required initially, a plaintiff must have proved by the end of trial the jurisdic-

tional facts by a preponderance of the evidence.

*Travelers Indem. Co. v. Calvert Fire Ins. Co.*, 798 F.2d 826, 831 (5th Cir.1986) (internal citations omitted). Thus, the finding that Unified has satisfied its burden of presenting a prima facie showing of personal jurisdiction at this stage of the litigation does not preclude AEC and/or Holder from again challenging the exercise of personal jurisdiction by the Court. *See Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 399–400 (5th Cir.2009) (explaining that an adverse ruling on the issue of personal jurisdiction at the pre-trial stage does not foreclose a defendant from holding the plaintiff to its ultimate burden at trial of establishing contested jurisdictional facts by a preponderance of the evidence); *De-Melo v. Toche Marine, Inc.*, 711 F.2d 1260, 1271 n. 12 (5th Cir.1983) ("Eventually, of course, the plaintiff must establish [personal] jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial. But until such a hearing is held, a prima facie showing suffices, notwithstanding any controverting presentation by the moving party, to defeat the motion.").

For these reasons, the Court finds the motion of AEC and Holder to dismiss based on a lack of personal jurisdiction should be denied. This finding does not preclude AEC and/or Holder from again challenging the exercise of personal jurisdiction, either pre-trial following discovery or at trial. Additionally, this finding does not relieve Unified of its ultimate burden of proving, by a preponderance of the evidence, that the exercise of personal jurisdiction by this Court over AEC and Holder would be proper.

## B. Motion to Dismiss for Failure to State a Claim

A motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is "viewed with disfavor" and "rarely granted." *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). When considering such motion, the Court must liberally construe the allegations in the complaint in favor of the plaintiff, and accept all pleaded facts as true. *See Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir.2004). As explained by the United States Court of Appeals for the Fifth Circuit:

> To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). 'Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).' *Id.* at 555, 127 S.Ct. 1955.

*In re Katrina Canal Breaches Lit.*, 495 F.3d 191, 205 (5th Cir.2007).

In its Amended Complaint, Unified alleges that AEC and Holder violated the CFAA, namely subsections 1030(a)(2), 1030(a)(4), and/or 1030(a)(5). These subsections provide, in relevant part:

> (a) Whoever
>
> (2) intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains—
>
> . . . .
>
> (C) information from any protected computer;
>
> . . . .
>
> (4) knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing ob-

tained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1–year period;

(5)(A) knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer;

(B) intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage; or

(C) intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss.

. . . .

shall be punished as provided in subsection (c) of this section.

18 U.S.C. § 1030.

■ In seeking dismissal of the CFAA claims, AEC and Holder first argue there are insufficient allegations that Teders downloaded confidential information from a computer. A review of the Amended Complaint, however, shows that Unified has pleaded not only that Teders had accessed a protect computer but also that he did so to download confidential information. *See* Am. Compl. at ¶ 47. Second, AEC and Holder argue that a plausible CFAA violation has not been alleged because Teders was authorized to access the confidential information. Several courts have recognized, however, that "once an employee is working for himself or another, his authority to access the computer ends, even if he or she is still employed at the present employer." *See Continental Group, Inc. v. KW Prop. Mgmt., LLC,* 622 F.Supp.2d 1357, 1372 (S.D.Fla.2009). Having reviewed the Amended Complaint, the Court finds Unified has pleaded sufficient facts to state plausible claims for relief under the CFAA. Accordingly, the Motion to dismiss these claims will be denied.

■ In its Amended Complaint, Unified next alleges that AEC and Holder violated the Mississippi Uniform Trade Secrets Act ("MUTSA"), codified at Miss. Code Ann. § 75–26–1 et seq. To state a viable claim under MUTSA, Unified must demonstrate: (1) a trade secret existed; (2) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means; and (3) the use of the trade secret was without the plaintiff's authorization. *Union Nat'l Life Ins. Co. v. Tillman,* 143 F.Supp.2d 638, 643 (N.D.Miss.2000) (citing *Body Support Sys., Inc. v. Blue Ridge Tables, Inc.,* 1997 WL 560920, at *6 (N.D.Miss. Aug. 12, 1997)). Here, Unified alleges that it owns confidential and proprietary information, which includes product pricing and customer-related information. Am. Compl. ¶¶ 73–81. This type of information has been found to be trade secrets for the purpose of the MUTSA. *See id.* at 644 (finding that information regarding the plaintiff's business methods and procedures as well as business accounts which included the names of its customers, were trade secrets for the purposes of the MUTSA); *Fred's Stores of Miss., Inc. v. M & H Drugs, Inc.,* 725 So.2d 902, 911 (Miss.1998) (finding the plaintiff's master customer list was a trade secret for the purposes of the MUTSA). Unified also alleges that Teders had obtained, that is made copies of, the trade secrets at a time he knew he was planning to leave his employment with Unified and begin working for AEC; the trade secrets he obtained were later disclosed; and that AEC and/or Holder authorized and directly participated in the misappropriation and disclosure of the trade secrets. Based on these allegations, the Court finds Unified has alleged a plausible MUTSA claim

against AEC and Holder and, as such, the motion to dismiss this claim will be denied. *See e.g. Tillman*, 143 F.Supp.2d at 644 (finding that the plaintiff had established a substantial likelihood of success on the merits of its MUTSA claim in a case in which (1) the defendant knew he had acquired the trade secrets at issue as a result of a confidential employment relationship he had had with the plaintiff; (2) he had an existing contractual duty to not disclose the trade secrets; (3) he had a contractual duty to abstain from using the trade secrets without prior authorization from the plaintiff; and (4) he had used the trade secrets without authorization).

The third claim alleged by Unified against AEC and Holder is the one of tortious interference. The Court finds, as it found it could exercise personal jurisdiction over AEC and Holder based on this claim, the claim is plausible on its face. *See Wyatt*, 686 F.2d at 280 (explaining that the plaintiff "must make a prima facie case on the merits to withstand a motion to dismiss under Rule 12(b)(2)."). Accordingly, the motion to dismiss this claim will be denied.

▮ The fourth claim alleged by Unified against AEC and Holder is one of negligent supervision. The elements of a claim of negligent supervision under Mississippi law are the same as those used in a general negligence claim, that is duty, breach, proximate cause and damages. *See e.g. Roman Catholic Diocese of Jackson v. Morrison*, 905 So.2d 1213, 1229 (Miss.2005) (finding the plaintiffs' negligent supervision claim was "simply a negligence claim, requiring a finding of duty, breach of duty, causation and damage."). In its Amended Complaint, Unified alleges that AEC and Holder knew of the contractual relationship that existed between Unified and Teders, which prohibited and/or limited Teders's business activities as well as his ability to use confidential and pro-

prietary business information; that AEC and Holder had a duty to supervise Teders's business-related activities and to prevent Teders's unauthorized disclosure and use of its confidential and proprietary business information; that AEC and Holder failed or refused to supervise Teders's business activities; and that, as a result, Unified sustained damages in the form of lost revenue, the loss of prospective advantageous business relationships, and accounts. *See* Am. Compl. ¶¶ 105–07. After reviewing the allegations in the Amended Complaint, the Court finds Unified has alleged a plausible negligent supervision claim against AEC and Holder and, as such, the motion to dismiss this claim will be denied.

▮ Finally, Holder has moved for dismissal of the claims alleged against him personally on the grounds there are no allegations that he engaged in individual wrongdoing. Under Mississippi law, however, "the general rule is … that when a corporate officer directly participates in or authorizes the commission of a tort, even on behalf of the corporation, he may be held personally liable." *Mississippi Printing Co., Inc. v. Maris, West & Baker, Inc.*, 492 So.2d 977, 978 (Miss.1986). Based on this rule, the Court finds Holder's motion to dismiss the claims alleged against him personally should be denied.

### III. Conclusion

For the foregoing reasons:

IT IS THEREFORE ORDERED that the Motion of Defendants to Dismiss [Docket No. 37] is hereby denied.

IT IS FURTHER ORDERED that the stay entered in this case [*see* Minute Entry of November 17, 2011], is hereby vacated, and the Clerk of Court is directed to return this case to the active Docket of the Court.

IT IS FURTHER ORDERED that counsel for Plaintiff shall, within seven days of the date on which this Opinion and Order is entered, contact the Chambers of United States Magistrate Judge Linda R. Anderson and request the scheduling of a case management conference.