663 So.2d 595 (1995)
MBF CORPORATION
v.
CENTURY BUSINESS COMMUNICATIONS, INC., A SUBSIDIARY OF CENTURY TELEPHONE ENTERPRISES, INC.
No. 92-CA-00347-SCT.
Supreme Court of Mississippi.
November 9, 1995.
*596 Joel W. Howell, III, Jackson, for Appellant.
William N. Reed, Ricky G. Luke, Watkins Ludlam & Stennis, Jackson, for Appellee.
Before DAN M. LEE, P.J., and PITTMAN and JAMES L. ROBERTS, Jr., JJ.
DAN M. LEE, Presiding Justice, for the Court:
The appellant, MBF Corporation, filed suit against Century Business Communications, Inc. seeking damages for tortious interference with the business relationships of MBF and its customers. At the close of the plaintiff's case, and on motion of the defendants, Century Business Communications, Inc., the Hinds County Circuit Court granted a directed verdict in favor of Century.
Feeling aggrieved, MBF has appealed to this Court, alleging, inter alia, error by the lower court in granting the directed verdict. After a careful review of the record, we find that MBF evinced sufficient proof of a prima facie case of tortious interference with its business relationships to surpass a grant of a directed verdict at the close of the plaintiff's case. Consequently, we reverse and vacate the ruling of the lower court granting a directed verdict in favor of Century and remand the case to the Hinds County Circuit Court for disposition not inconsistent with this opinion. However, we affirm the lower court's denial of MBF's motion for leave to amend and add Century Telephone as a defendant.

I. STATEMENT OF THE FACTS
Appellant, MBF Corporation [hereinafter MBF] was founded in 1974 as Monroe Business Forms by J.D. Greco, with its home office in Monroe, Louisiana. The principal business of MBF is the distribution of business forms. Its sales representatives, who are involved in customer contact and forms designing, are responsible for soliciting orders, making arrangements for the production through various manufacturers, and delivery to the customer as desired.
MBF opened its field office in Jackson, Mississippi, in 1985. Since that time, the Jackson office has had from three to five sales people and has generated $175,000 to $550,000 in sales annually. Mark Elliott was hired in early 1989 to serve as sales manager and vice president of sales of MBF to recruit, service and aid the existing sales staff. At the time when most of the operative events relative to this action occurred, the sales representatives in the Jackson MBF branch *597 under Elliott's direction were Walter "Skip" Moore, Samuel Higginbotham, and Edward Perry.
Elliott, whose employment with MBF was terminated in December of 1989, was subsequently hired by Century Business Communications, Inc. [hereinafter Century] in a position similar to the one he held at MBF. Shortly after Elliott began work at Century, the company altered its marketing strategy and expanded its operations from its home office in Monroe, Louisiana into its first branch in Jackson, Mississippi.
During January of 1990, Mark Elliott contacted both Higginbotham and Moore of MBF, who agreed to terms of employment with Century in the Jackson branch. About two weeks prior to their departure from MBF on February 19, 1990, Higginbotham and Moore began the procedure of copying all their customer files, which contained detailed information on the MBF customer accounts they handled while employed at MBF. During this process, the two salesmen realized that the files could not possibly be duplicated within the time left on their jobs at MBF, and the remainder of the original files were loaded onto a truck and removed from the premises of MBF. Certain other items, including client Rolodexes, customer lists, and customer inventory, were also removed at that time.
Also, Higginbotham and Moore admittedly held purchase orders acquired while still on the MBF payroll to be turned over to Century after leaving MBF's employment. These customer orders were taken for the benefit of Century on purchase order invoices bearing the Century name, which had been provided to them by Elliot for Century just prior to their leaving MBF's employ. In addition, Moore wrote a letter to the City of Jackson on MBF letterhead indicating that MBF desired its name to be removed from the City's bid list. Further, Higginbotham informed one of his customers that MBF was closing its Jackson branch.
Upon discovering that Higginbotham and Moore had taken certain items from its office, MBF made a demand on Century for the return of specific files. These files, along with others, were returned within a matter of days. The personal Rolodexes and vendor lists of the salesmen were also retrieved within two or three days. Finally, after further demand by MBF, the remainder of the files were returned by July of 1990.
In a series of three lawsuits, MBF sued Moore, Higginbotham, and Century, alleging inter alia, that Moore and Higginbotham had taken certain customer files which constituted interference with MBF's business relationships with its clients, and that Century was vicariously liable for the torts of the two men. There was no claim of an anti-competition agreement asserted against either of the two salesmen.
The case sub judice, which involves only Century and the claims alleged therein, originated on July 30, 1990, with a complaint filed by MBF Corporation in Hinds County Circuit Court. The complaint alleged, inter alia, that Century Business Communications, Inc. had induced certain employees of MBF to terminate their employment with MBF and join the staff of Century. The complaint sought damages for tortious interference with the business relationships of MBF and its customers.
On February 12, 1992, after all discovery was conducted, the case proceeded to trial. At the close of the plaintiff's case, Century moved for a directed verdict based on MBF's failure to prove a prima facie case of tortious interference with business relationships. The trial court sustained Century's motion and granted the directed verdict. MBF timely filed its notice of appeal, assigning the following as errors:
I. THE TRIAL COURT ERRED IN DIRECTING A VERDICT FOR DEFENDANT
II. CENTURY TELEPHONE SHOULD HAVE BEEN ADDED AS A DEFENDANT
III. THE TRIAL COURT ERRED IN REFUSING TO ADMIT DOCUMENTS TAKEN AND SUBSEQUENTLY RETURNED BY THE DEFENDANT
IV. THE TRIAL COURT ERRED IN REFUSING TO ALLOW TESTIMONY AS TO THE REASONS *598 FOR THE TERMINATION OF MARK ELLIOTT BY MBF

II. DISCUSSION OF THE LAW
After careful consideration and review of the relevant record, briefs and authorities, we find MBF's first and second assignments of error to be dispositive. Therefore, we find it unnecessary to discuss the remainder of MBF's contentions. However, the trial judge, upon remand, may wish to consider the evidence more favorably to the non-moving party, i.e., MBF, than was done in the first trial.

I. DID THE TRIAL COURT ERR IN DIRECTING A VERDICT FOR DEFENDANT?
MBF argues that the trial judge erred in granting Century's motion for a directed verdict. In deciding if the motion for a directed verdict on the issue of tortious interference with business relations should be granted, this Court must view the evidence in the light most favorable to the non-moving party, and if by any reasonable interpretation, it can support an inference of tortious interference which the non-moving party seeks to prove, the motion must be denied. Turner v. Wilson, 620 So.2d 545, 550 (Miss. 1993); Wirtz v. Switzer, 586 So.2d 775, 779 (Miss. 1991); Paymaster Oil Co. v. Mitchell, 319 So.2d 652, 656 (Miss. 1975).
Courts have recognized the right to engage in legitimate competition. See James O. Pearson, Jr., Annotation, Liability for Interference With at Will Business Relationship, 5 A.L.R. 4th 9, 17 (1981). It is proper to engage in competition for prospective gain, as long as tortious acts are not employed to further that gain. Prosser and Keaton, The Law on Torts, § 130, 1012 (5th ed. 1984). Furthermore, it is clearly not a tort to fairly compete with a business rival for a prospective customer. Id. A competitor should feel free to acquire business for himself by fair and reasonable means. Id.
However, this Court has held that interference with existing contracts or property is actionable under our tort law. The tort of interference with business relations is closely aligned with that of interference with a contract. However, the two torts, by definition, may be distinguishable one from the other depending on the tortious acts employed. In Cenac v. Murry, 609 So.2d 1257, 1268 (Miss. 1992), this Court stated:
Fundamentally, it is one thing for a wrongdoer to cause another to breach a contract which he or she has with some third person. This is tortious interference with performance of a contract. Yet, it is quite another thing when a wrongdoer unlawfully diverts prospective customers away from one's business thereby "encouraging" customers to trade with another. This is tortious interference with business relations or sometimes referred to as interference with prospective advantage ... (emphasis added)
See also Bailey v. Richards, 236 Miss. 523, 111 So.2d 402 (1959) (recognizing rule; wrongful); Wesley v. Native Lumber Co., 97 Miss. 814, 53 So. 346 (1910) (recognizing the tort of interference with business relationships).
There are four elements necessary to prove a claim of tortious interference with a business relationship:
(1) The acts were intentional and willful;
(2) The acts were calculated to cause damage to the plaintiffs in their lawful business;
(3) The acts were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice);
(4) Actual damage and loss resulted.
Nichols v. Tri-State Brick and Tile, 608 So.2d 324, 328 (Miss. 1992); See also ACI Chemicals, Inc. v. Metaplex, Inc., 615 So.2d 1192, 1201 (Miss. 1993), quoting Protective Service Life Ins. Co. v. Carter, 445 So.2d 215, 217 (Miss. 1983). In order to prove its prima facie case of damages, "the plaintiff must show (1) a loss, and (2) that defendant's conduct caused the loss." Cenac v. Murry, 609 So.2d 1257, 1271 (Miss. 1992) citing Prosser & Keaton, The Law of Torts, § 130, 1010 (5th ed. 1984). The four elements of interference with a business relationship must be *599 proven by a preponderance of the evidence. Protective Service Life Ins. Co., 445 So.2d at 216.
In the case sub judice, we hold that MBF put on sufficient evidence, when interpreted in the light most favorable to the non-moving party, to establish the requisite elements of tortious interference with business relationships necessary to overrule the defendants motion for a directed verdict. See Paymaster Oil Co. v. Mitchell, 319 So.2d 652, 656 (Miss. 1975). Therefore, a directed verdict at the close of the plaintiff's case was clearly in error.
First, MBF established that Century's acts were intentional and willful. Second, MBF put on proof that the acts were calculated to cause damage to their customer base and, in turn, to the entire business. The sole motive for Century's actions may not have been the destruction of MBF, but it is clear that Century intentionally and willfully took files from the premises of MBF, as well as hired its two key salesmen. Mark Elliot instructed Higginbotham and Moore to copy customer files containing vital information. In addition, Elliot supplied the two salesmen with Century purchase order invoices which were used to obtain orders on behalf of Century from MBF customers while Higginbotham and Moore were still employed by MBF. Accordingly, it would appear that Century's conduct was calculated to cause damage to MBF. Third, Century's acts were not the result of a justifiable purpose within the realm of legitimate competition to acquire customers for itself, but were instead motivated by the unlawful purpose of causing damage or loss. See St. Louis S.F.R. Co. v. Wade, 607 F.2d 126 (5th Cir.1979); Wesley v. Native Lumber Co., 97 Miss. 814, 53 So. 346 (1910). The record indicates several instances in which Century went far beyond the realm of legitimate competition, including the salesmen' actions of selling supplies on behalf of Century while still under the employ of MBF, the removal of customer files and inventory from the premises, the letter written by Moore to take MBF off the City of Jackson bid list, and the information spread to customers by Higginbotham that MBF was closing its Jackson branch.
Finally, MBF met the burden of proof needed to establish a prima facie case of damages, which includes showing that the financial loss was caused by Century's behavior. Cenac v. Murry at 1272. On the stand, MBF officers allege that profits and customer trade have sharply diminished, and offer as proof the financial statements which show a decline of income. MBF further asserts that because its sales and net income have decreased, that in itself was sufficient proof that Century had committed tortious interference with business relationships.
In addition, MBF proffered the missing files as evidence to show that the removal of the files from the Jackson branch was the cause of the loss of sales or profits. Though their efforts to prove damages were erroneously curtailed by the trial judge, MBF sufficiently established that anticipated income had dropped as a result of Century's actions. In Koehring Company v. Hyde Construction Company, 254 Miss. 214, 251, 178 So.2d 838, 853 (1965), this Court held that a party "will not be able to escape liability because of the lack of a perfect measure for damages ... Therefore, a reasonable basis for computation and the best evidence which is obtainable under the circumstances of the case, and which will enable the trier to arrive at a fair approximate estimate of loss is sufficient proof." Cf. R & S Development, Inc. v. Wilson, 534 So.2d 1008, 1012 (Miss. 1988) (recovery of damages not precluded with uncertain damages if landowners gave "fair and reasonable estimate" of damages); Kaiser Investments v. Linn Agriprises, 538 So.2d 409, 414-15 (Miss. 1989) (profit projections for crops recoverable for limited reasonable future time if the business has been established, has made profits, and there are definite, certain and reasonable data).
Although additional factors, such as loss of two key salesmen, and the failure to hire additional staff to replace them may have also contributed to MBF's financial ruin, that is a question for the finder of fact to determine after a full trial on the merits. However, it is clear that the facts in the case at bar are particularly egregious as to establish adequate proof of damages needed to overrule Century's motion for a directed verdict at the close of the plaintiff's case.
*600 On these particular facts, the case sub judice is an example of bad acts exceeding the realm of legitimate competition, which is sufficient to constitute tortious interference with business relationships. While the trial court stated the correct legal principles to be applied in cases involving the interference with a contract, the case sub judice does not involve interference with a single contract, but instead with an entire business and its customer base. Consequently, the trial judge's reliance on the case of Harrison v. Prather, 435 F.2d 1168 (5th Cir.1970), cert. denied, 404 U.S. 829, 92 S.Ct. 67, 30 L.Ed.2d 58, reh'g denied, 404 U.S. 960, 92 S.Ct. 306, 30 L.Ed.2d 278 (1971), which also involved a single contract, is clearly misplaced since this Court has not expressly adopted the "but for" test in cases involving the tortious interference with business relationships or prospective advantage.
Despite the trial judge's limitations on evidence and his misapplication of the "but for" analysis adopted by this Court for contract cases, MBF sufficiently established a loss of income caused by the actions of Century. When viewing the evidence in the light most favorable to the non-moving party, i.e., MBF, the grant of a directed verdict at the close of MBF's case was clearly in violation of this Court's rule in Paymaster. Accordingly, we reverse the trial judge's ruling and remand this case to the Hinds County Circuit Court.

II. CENTURY TELEPHONE SHOULD HAVE BEEN ADDED AS A DEFENDANT.
MBF made a motion to amend and add the parent corporation, Century Telephone, as a defendant. It is MBF's contention that Harvey Perry and Glenn Post, who are officers in both Century and Century Telephone, were directly responsible for the supervision of Mark Elliott. Therefore, MBF argues that in addition to Century, Century Telephone should also be held responsible for the delay in the return of the files and subsequent alleged damages resulting from that delay, and should be added as defendants to the case sub judice. MBF argues that Century Telephone could be held liable under either direct liability for its officers' actions and inactions, respondeat superior, master-servant, or agency principles.
The grant or denial of a motion for leave to amend is within the sound discretion of the trial court. McDonald v. Holmes, 595 So.2d 434, 436 (Miss. 1992); Bourn v. Tomlinson Interest, Inc., 456 So.2d 747, 749 (Miss. 1984). This Court is not under the authority to reverse "unless we are convinced that the trial judge abused his discretion." Parker v. Mississippi Game and Fish Commission, 555 So.2d 725, 730 (Miss. 1989). See also Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222, 226 (1962) (stating the standard of review for a motion for leave to amend).
Miss.R.Civ.P. 15(a) provides in part:
A party may amend his pleading as a matter of course at any time before a responsive pleading is served, or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within thirty days after it is served ... Otherwise, a party may amend his pleading only by leave of court or upon written consent of the adverse party; leave shall be freely given where justice so requires.
The trial judge did not abuse his discretion in the case sub judice by denying MBF's motion to amend the pleadings. Century is a corporate subsidiary separate and distinct from its parent corporation, Century Telephone. Though the officers and directors are the same, the two corporations are maintained under separate identities, and Century Telephone should not be held responsible for any liability of Century under the facts of this case. Accordingly, the lower court's denial of MBF's motion for leave to amend is affirmed.
REVERSED AND REMANDED IN PART; AFFIRMED IN PART.
HAWKINS, C.J., and SULLIVAN, PITTMAN, BANKS, McRAE, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.
PRATHER, P.J., not participating.