George F. HOLLOWELL, Jr., Plaintiff,

v.

Theodore STERN, Defendant.

No. 4:95CV370–S.

United States District Court,
N.D. Mississippi,
Eastern Division.

Sept. 2, 1997.

Robert C. Dean, Greenville, MS, for plaintiff.

Charles E. Sorey, II, Ramsey & Sorey, Vicksburg, MS, for defendant.

## OPINION

SENTER, Chief Judge.

This diversity case was tried to the court sitting without a jury. Plaintiff alleges defendant tortiously interfered with a contract or business relationship of plaintiff. Having duly considered the evidence presented by the parties together with oral argument and briefs of counsel, the court makes its findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

### THE FACTS

The defendant, Theodore Stern, a resident of Pittsburgh, Pennsylvania, is the owner of a tract of land located in Greenville, Mississippi, commonly referred to as the Chicago Mill property. Mr. Stern purchased this land April 19, 1995, recognizing that it had marketable possibilities for a dockside gambling casino and hotel site.

Plaintiff George F. Hollowell, Jr., is an attorney who practices law and resides in Greenville, Mississippi. He sought to obtain financing to purchase the property of defendant and construct a casino thereon. Plaintiff alleges that he had an agreement with Ted Gatzaros and Jim Papas, of Detroit, Michigan, whereby Gatzaros and Papas would obtain financing for the casino project. However, before defendant Stern would execute a written binding sales contract for this property to plaintiff, he required the plaintiff to divulge the names of his partners and associates that would be involved in the purchase of the real property and the construction and operation of the casino. Mr. Stern

had retired from a position with Westinghouse. He had acquired an interest in International Gaming Management, a company that was having problems with federal regulatory agencies. He was aware that involvement with people who had any type of criminal history would be hazardous to his gaming interest. To that end, Mr. Stern demanded that he do "due diligence" as to the persons involved with plaintiff. After the plaintiff revealed that Gatzaros and Papas would be doing the financing and have a major interest in this project, he sought and obtained permission from the plaintiff to talk with Gatzaros and Papas. Mr. Stern flew to Detroit October 13, 1995, and discussed the financing of the purchase of his land with Mr. Gatzaros. Stern learned that the plaintiff did not have a firm and binding commitment with the Gatzaros group which would include the purchase price of defendant's property, and he refused to go forward with the signing of any additional documents and commitments to plaintiff.

There was no proof that Theodore Stern made any derogatory remarks about the plaintiff or plaintiff's consultant, Jerry Polinsky, in his meeting with the Gatzaros group. Indeed, it was Ted Gatzaros who learned of criminal problems by both National Gaming Management and Jerry Polinsky, who was plaintiff's consultant and, ultimately, working interest partner in the project. It was Gatzaros who was scared that any involvement with Polinsky could endanger or put in jeopardy his gaming license in Detroit, Michigan.

The court finds that the defendant, Theodore Stern, had a legitimate business interest in determining whether to sign a binding agreement with Mr. Hollowell and whether or not there would be funds available for the purchase of the property.

Believing that Mr. Stern tortiously interfered with a contract and business relationship he had with the Gatzaros group, plaintiff filed this lawsuit.

### THE LAW

■ In order to establish his case of tortious interference with a contract or business relationship, it is necessary for the plaintiff to prove all four of the following elements:

(1) The acts were intentional and wilful;

(2) The acts were calculated to cause damage to the plaintiff in his lawful business;

(3) The acts were done with the unlawful purpose of causing damage and loss, without regard or justifiable cause on the part of the defendant (which constitutes malice); and

(4) Actual damage or loss resulted.

*MBF Corp. v. Century Business Communications,* 663 So.2d 595, 598 (Miss.1995).

■ The court finds that defendant Stern was told by Gatzaros during their meeting on October 13, 1995, in Detroit, that the Gatzaros group had *no agreement* with plaintiff Hollowell for the development of the casino site in Greenville. Mr. Stern was also told at this meeting that the Gatzaros group did not have the $400,000.00 down payment or the 4 million dollar purchase price that would be due under the contract for the purchase of the property proposed by plaintiff Hollowell. Having been told that there was no contractual or business relationship between plaintiff and the Gatzaros group, the court finds plaintiff's act in making his "due diligence" by discussing this matter with the Gatzaros group was not an intentional and willful effort to interfere with plaintiff's alleged contractual and business relationship with the Gatzaros group. The fact is, no such relationship existed.

Plaintiff alleges that a subsequent agreement dated January 1, 1996, "entered into between defendant Stern and the Chippewa Indians, arranged by Mr. Gatzaros," was evidence that defendant Stern intentionally and wilfully interfered with plaintiff's business relationship. However, the overwhelming evidence clearly shows that long prior to this agreement, plaintiff's so-called relationship with the Gatzaros group had been terminated and Stern was not bound to any contractual relationship with plaintiff.

In summary, plaintiff has failed to prove the four elements set forth in *MBF Corp. v. Century Business Communications, supra,* necessary to establish his case of tortious interference with a contract or business relationship. The court finds for the defendant on this claim.

### THE COUNTERCLAIM

■ Defendant has filed his counterclaim alleging that plaintiff's filing of a lis pendens

notice in the Chancery Clerk's office of Washington County was done in "bad faith" to disparage the title to defendant's land and has presented evidence of damages resulting therefrom. The court finds defendant could and should have resorted to an appropriate state court proceeding to remove this lis pendens notice and further finds that plaintiff's actions in the filing of the lis pendens notice were not wilfully or maliciously designed to disparage the title to defendant's land, but the notice was filed by the plaintiff in a good faith belief that he had a legitimate claim in his lawsuit against defendant. The court finds for the plaintiff on the counterclaim of the defendant.