# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-60810

United States Court of Appeals
Fifth Circuit

**FILED**
September 20, 2018

Lyle W. Cayce
Clerk

WRECKER WORKS, L.L.C.; STEPHANIE THOMPSON,

      Plaintiffs–Appellants,

v.

CITY OF ABERDEEN, MISSISSIPPI; HENRY RANDLE, in his individual
capacity,

      Defendants–Appellees.

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 1:16-CV-117

Before DENNIS, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

Stephanie Thompson sued the city of Aberdeen, Mississippi (the City) and its Chief of Police, Henry Randle, under 42 U.S.C. § 1983, asserting a deprivation of a property right in violation of the due process clause of the Fourteenth Amendment. She also asserted a state-law claim against Randle for tortious interference with business relations. The district court granted summary judgment for the City and Randle on all claims. We affirm.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-60810

**I**

When a traffic accident in Aberdeen necessitates the towing of a vehicle, the local police department dispatches a private provider from the City's rotation list, unless the owner of the vehicle requests a specific company. The requirements for inclusion on the rotation list are set forth in the City's towing or wrecking service ordinance.

Stephanie Thompson started a towing business in April 2016. She formed a limited liability company, Wrecker Works, LLC, and bought the equipment and tools of a local company, Irvin Wrecker Service, from Dean Irvin. The asset purchase agreement purported to assign Irvin Wrecker Service's customer contracts and its place on several wrecker-service rotation lists, including that of the City. Irvin told Thompson that he usually received one to three rotation-list calls per week from the City. During a short transition period before the sale, Thompson serviced clients (other than the City) of Irvin Wrecker Service, which later transmitted the payments to Thompson.

Unbeknownst to Irvin and Thompson, when Chief Randle learned of the pending sale two weeks before the transaction was finalized, he removed Irvin Wrecking Company from the rotation list. Chief Randle also operated a towing company, H & M Towing. H & M Towing provided services primarily to private clients, but occasionally received calls from the City if the vehicle owner specifically requested H & M. Randle's company had not been on the City's rotation list since 2014, when he was the subject of an ethics complaint to the state attorney general. Randle had a fractious relationship with Irvin, a former alderman who had voted to halve Randle's pay due to personnel issues not related to the wrecker/towing service rotation list.

Prior to the consummation of the transaction with Irvin, Thompson submitted a request to the City Clerk on April 27, 2016, to have Wrecker Works

2

No. 17-60810

added to the rotation list. Under the wrecker ordinance in place between March 2014 and June 7, 2016, a towing company seeking to be on the rotation list was required to file a written request with the Clerk. The City Building Official and Zoning Administrator would then investigate the company, including its equipment and insurance coverage, to ensure it was qualified to be on the rotation list. When the "investigating officer" was "satisfied" of the company's qualifications, he or she would "direct the City Clerk to issue the wrecker company an 'Authorized Permit' and the Clerk [would] direct the Chief of Police to place the company on the City of Aberdeen Rotation list." The ordinance defined "Authorization Permit" as "[t]he written authorization by the City Clerk (after receiving the Compliance Officer's report of compliance) which entitles a Wrecker Company's name to be placed on the Wrecker Rotation list."

Neither Thompson nor city officials followed the requirements of the wrecker ordinance to the letter. Thompson testified that she gave the Clerk a certificate of insurance and that the Clerk ordered an investigation to determine that Wrecker Works met all qualifications. Thompson appears to have believed that because the equipment previously belonged to a company on the rotation list, an inspection was unnecessary. She maintains that other required steps were also completed. However, the record does not reflect that an inspection took place or that Wrecker Works received an authorization permit from the City Clerk. Instead, Thompson asked the Board of Aldermen (Board), the City's governing body, to put Wrecker Works on the rotation list. The Board approved this request on May 3, 2016, even though Board approval was not part of the procedures to gain inclusion on the rotation list set forth in the wrecker ordinance in effect at the time. Two days later, Thompson and Irvin formalized the asset purchase agreement, and Irvin Wrecker Service eventually dissolved.

3

No. 17-60810

When Wrecker Works did not initially receive calls from the City, Thompson informed Alderman Jim Buffington, who agreed to address the matter at the June 7, 2016 Board meeting. Buffington asked Chief Randle why Wrecker Works was not on the rotation list. In this litigation, Randle stated that he did not initially put Wrecker Works on the list because he was in the process of drafting a new wrecker ordinance—which the Board approved in the June 7 meeting—that gave Randle the authority to investigate the companies seeking to be on rotation. He also claimed that Thompson had not given him a certificate of insurance—a requirement of the new ordinance. About three days after the meeting, Wrecker Works began receiving the expected number of calls.

Later, Wrecker Works and Thompson sued, claiming that the City and Chief Randle violated the due process clause by failing to place Wrecker Works on the rotation list immediately after the May 3 Board meeting. They sought to recover the estimated income lost (about $2,500) for the period between May 3 and June 10. Wrecker Works and Thompson also sued Randle for malicious interference with business relations under state law.

The district court granted summary judgment in favor of the City and Chief Randle. As to the constitutional claims, the court reasoned that Wrecker Works did not have a property interest in being placed on the rotation list immediately. Alternatively, the court held that the City could not be held liable for Chief Randle's actions and that Chief Randle had qualified immunity. As to the state law claim, the court concluded that there was no evidence that Chief Randle's actions were motivated by malice. Wrecker Works and Thompson appeal. Wrecker Works and Thompson expressly concede in their Reply Brief that the City is not liable for the purported deprivations of due process. We therefore limit our analysis to whether Chief Randle can be held

4

No. 17-60810

liable—under the Constitution or under state law—for his delay in placing Wrecker Works on the rotation list.

## II

We review a district court's grant of summary judgment de novo.[1]  To survive summary judgment on their procedural and substantive due process claims, Wrecker Works and Thompson must establish that Chief Randle is not entitled to qualified immunity.  "The doctrine of qualified immunity protects government officials from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[2]  "A plaintiff can overcome a qualified immunity defense by showing '(1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'"[3]

The Fourteenth Amendment  prohibits state actors from "depriv[ing] any person of life, liberty, or property, without due process of law."[4]  To obtain redress under the due process clause, a plaintiff must show that (1) she has a property interest and (2) a state actor has deprived her of that interest without due process.[5]  Property interests are not created by the text of the Constitution itself, but by other sources such as "state law, local ordinances, contracts, and mutually explicit understandings."[6]  While benefits distributed by the government may give rise to property interests,[7] a mere "unilateral

---

[1] *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016) (citing *United States v. Lawrence*, 276 F.3d 193, 195 (5th Cir. 2001)).

[2] *Rockwell v. Brown*, 664 F.3d 985, 990 (5th Cir. 2011) (internal quotations omitted) (quoting *Pearson v. Callahan,* 555 U.S. 223, 231 (2009)).

[3] *Allen v. Cisneros*, 815 F.3d 239, 244 (5th Cir. 2016) (per curiam) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)).

[4] U.S. CONST. amend. XIV.

[5] *Blackburn v. City of Marshall*, 42 F.3d 925, 935 (5th Cir. 1995).

[6] *Id.* at 936-37.

[7] *Ridgely v. FEMA*, 512 F.3d 727, 735 (5th Cir. 2008).

expectation of receiving government referrals"[8] is not sufficient—there must be a "legitimate claim of entitlement."[9]  Whether the City's rotation list confers a property interest depends on whether the specific facts of this case create an entitlement.[10]

Over the course of this litigation, Wrecker Works has identified three potential sources for its alleged property interest.  First, Wrecker Works claims that it has a right to be on the rotation list because Irvin Wrecker Service had previously been on the list, and the purchase agreement between the two entities purported to assign the relationship with the City.  As an initial matter, Wrecker Works had no property interest in assuming Irvin Wrecker Service's place on the list.  The transaction between Wrecker Works and Irvin Wrecker Service was structured as an asset purchase rather than a merger or equity purchase, and Irvin Wrecker Service dissolved after the sale.  Nothing in the wrecker ordinance permits a towing company to assign a right to be included on the rotation list.  Rather, the ordinance states that any authorization permit is "personal to the holder" and prohibits towing companies from referring rotation calls to other companies.  Inclusion on the rotation list was specific to a particular company.  Furthermore, there was no understanding between the Board and Thompson that Wrecker Works would occupy Irvin Wrecker Service's place on the list.  In fact, Thompson sought and obtained Board approval for Wrecker Works to be on the list before the asset purchase was finalized.

---

[8] *Blackburn*, 42 F.3d at 937.

[9] *Id.* at 936.

[10] *Id.* at 937; *see also Chavers v. Morrow*, 354 F. App'x 938, 940-42 (5th Cir. 2009) (per curiam) (unpublished) (observing that tow-rotation schemes may confer property interests but holding that the ordinance at issue did not do so).

No. 17-60810

Insofar as Wrecker Works seeks to litigate constitutional claims on behalf of Irvin Wrecker Service, it lacks standing to do so. To have standing to sue in federal court, plaintiffs must demonstrate:

> (1) that they suffered an injury in fact, which is a concrete and particularized invasion of a legally protected interest; (2) that the injury is traceable to the challenged action . . . ; and (3) it is likely, rather than merely speculative, the injury will be redressed by a particular decision.[11]

The district court held that Wrecker Works did not have standing to argue this issue because any injury caused when Chief Randle removed Irvin Wrecker Service from the rotation list affected only Irvin Wrecker Service. Any redress would accrue to Irvin Wrecker Service, not Wrecker Works. On appeal, Wrecker Works and Thompson argue that since Thompson was operating her wrecker service under the Irvin Wrecker Service name shortly before the official sale was completed, Thompson did experience an injury. Assuming that Wrecker Works suffered an injury when Irvin Wrecker Service was removed from the rotation list, Wrecker Works does not have standing because any relief would belong to Irvin Wrecker Service. Since Wrecker Works merely acquired enumerated *assets* of Irvin Wrecker Service—it did not acquire the entity itself or its accounts receivable—it has no claim of damages for any business lost by the removal from the rotation list. Because any relief regarding the removal of Irvin Wrecker Service from the rotation list would not redress harm experienced by Wrecker Works, Wrecker Works does not have standing.

As a second source of a property interest, Wrecker Works argued before the district court that the City's wrecker ordinance granted it the right to be on the list. Whether the ordinance creates a constitutionally protected

---

[11] *Williams v. Parker*, 843 F.3d 617, 620 (5th Cir. 2016) (quoting *Hollis v. Lynch*, 827 F.3d 436, 441 (5th Cir. 2016)); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

property interest depends on "whether [it] place[s] 'substantive limitations on official discretion.'"[12] "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion."[13] "In determining whether statutes and regulations limit official discretion, the Supreme Court has explained that we are to look for "'explicitly mandatory language," *i.e.,* specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow.'"[14] In *Ridgley*, for example, this court held that the plaintiffs did not have a property interest in rent assistance from FEMA because the relevant statutes and regulations said only that FEMA "may" give assistance to qualifying individuals.[15]

The City's wrecker ordinance provides that, after the required inspections and investigations, if the "Investigating Officer is satisfied that the wrecker company is qualified, he will direct the City Clerk to issue the wrecker company an 'Authorized Permit' and the Clerk will direct the Chief of Police to place the company on the City of Aberdeen Rotation list." The district court held that Thompson and Wrecker Works did not have a property interest in *immediate* placement on the list and that the ordinance does not mandate that the Chief of Police follow directives from the City Clerk to put companies on the rotation list.

Wrecker Works concedes this point on appeal, stating that Wrecker Works' property interest was "not dependent upon the ordinance itself." Even if Wrecker Works had pressed the issue, the record does not reflect that Wrecker Works had undertaken all of the steps necessary to qualify under the ordinance. The definitions section of the ordinance states that companies that

---

[12] *Ridgely*, 512 F.3d at 735 (quoting *Olim v. Wakinekona,* 461 U.S. 238, 249 (1983)).

[13] *Id.* (quoting *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005)).

[14] *Id.* at 735-36 (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 463 (1989)).

[15] *Id.* at 736.

obtain an "authorization permit" have a "written authorization by the City Clerk . . . which entitles a Wrecker Company's name to be placed on the Wrecker Rotation list."  But the record does not contain an authorization permit from the City Clerk, nor is there evidence of the inspections and report of compliance required for Wrecker Works to receive a permit.  Rather, Thompson's testimony reflects that there was no investigation of her equipment—she believed it unnecessary because the equipment had previously been used by Irvin Wrecker Service when it was on the rotation list.

As a third potential source of a property right, Wrecker Works argues that when the Board voted in its May 3 meeting to put Wrecker Works on the rotation list, there was a "mutually explicit understanding" between Thompson and the Board that Wrecker Works would be placed on the rotation list.  The district court did not address this argument, likely because Wrecker Works referenced it only obliquely in the proceedings below.  It is well-established that "'property' interests subject to . . . due process protection are not limited by a few rigid, technical forms," but can arise from "mutually explicit understandings."[16]  In defining such an understanding, the Supreme Court has analogized to the doctrine of implied contracts and to labor doctrines that emphasize course of dealing and historical practice.[17]

In this case, we must evaluate whether such an understanding existed with reference to state law.[18]  In Mississippi, "where a public board engages in business with another entity, 'no contract can be implied or presumed, it must be stated in express terms and recorded on the official minutes and the action

---

[16] *Perry v. Sindermann*, 408 U.S. 593, 601 (1972).

[17] *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981).

[18] *Blackburn v. City of Marshall*, 42 F.3d 925, 937 (5th Cir. 1995) (quoting *Bishop v. Wood,* 426 U.S. 341, 344 (1976)).

of the board.'"[19]  When the minutes reflect an agreement, the "entire contract need not be placed on the minutes," but the agreement can be enforced only "where 'enough of the terms and conditions of the contract are contained in the minutes for determination of the liabilities and obligations of the contracting parties without . . . resort[] to other evidence.'"[20]

The official minutes from the Board's May 3 meeting state that the Board unanimously voted to "add Wrecker Works, Wrecker Services, Robert and Stephanie Thompson to the Aberdeen Police Department[']s rotation list."  The minutes could be construed to adopt the terms of participation in the rotation list outlined in the wrecker ordinance (even though the Board did not hold Wrecker Works to the qualification requirements in the ordinance).  We therefore assume that the Board's vote could constitute an implied contract that Wrecker Works would be placed on the rotation list.  However, neither the minutes nor the ordinance say when Wrecker Works would be added to the rotation list.  As a result, there was no "mutually explicit understanding" that Wrecker Works would immediately begin to receive calls.  Absent such an understanding, Wrecker Works did not have a property right in immediate inclusion on the list.  Without a constitutionally protected property interest, Wrecker Works cannot overcome the first prong of qualified immunity.

Even if we determined that Wrecker Works had a property interest in being placed on the rotation list *immediately*, Chief Randle did not violate clearly established law by his one-month delay.  The "clearly established" prong of qualified immunity requires that a government official's conduct not violate clearly established constitutional or statutory rights that a reasonable

---

[19] *Wellness, Inc. v. Pearl River Cty. Hosp.*, 178 So. 3d 1287, 1291 (Miss. 2015) (quoting *Burt v. Calhoun*, 231 So. 2d 496, 499 (Miss. 1970)).

[20] *Id.* (quoting *Thompson v. Jones Cty. Cmty. Hosp.*, 352 So. 2d 795, 797 (Miss. 1977)).

person would know.[21]   Although we "do[] not require a case directly on point"[22]—government officials may violate clearly-established law even in novel factual scenarios if previous cases provide reasonable warning[23]—there must be case law "'particularized' to the facts of the case"[24] that puts the question "beyond debate."[25]   The Supreme Court has recently reiterated the "longstanding principle that 'clearly established law' should not be defined 'at a high level of generality'"[26] or couched in "abstract" terms that would effectively eviscerate immunity.[27]   In brief, "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"[28]

Citing *Bowlby v. City of Aberdeen*,[29] Wrecker Works and Thompson contend that Chief Randle contravened settled law when he delayed in putting Wrecker Works on the rotation list.  In *Bowlby*, the City of Aberdeen's zoning board granted the plaintiff a permit to operate a snow-cone business for a specific street corner near the entrance to town.[30]   Shortly thereafter, the zoning board changed its mind and revoked the permit at a meeting to which the snow-cone proprietor was not invited.[31]   The plaintiff sued, claiming that

---

[21] *Rockwell v. Brown*, 664 F.3d 985, 990 (5th Cir. 2011).

[22] *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam).

[23] *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc).

[24] *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)).

[25] *Id.* at 551.

[26] *Id.* at 552 (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 742 (2011)).

[27] *Id.*; *see also Kisela*, 138 S. Ct. at 1152-53 (noting that "[s]pecificity is especially important in the Fourth Amendment context" due to the difficulties that officers face in determining whether to use force) (internal quotations and citations omitted); *Davidson v. City of Stafford*, 848 F.3d 384, 394 (5th Cir. 2017), *as revised* (Mar. 31, 2017) (assuming, *arguendo*, that *White*'s emphasis on specificity applies to cases other than excessive force, such as warrantless arrests and limits on speech).

[28] *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).

[29] 681 F.3d 215 (5th Cir. 2012).

[30] *Id.* at 218.

[31] *Id.*

she had a property interest in the permit to operate at the original location and that the board had deprived her of that property without due process of law.[32] We agreed, holding that because "[p]rivileges, licenses, certificates, and franchises . . . qualify as property interests,"[33] "once issued, a license or permit cannot be taken away by the State without due process."[34]

Wrecker Works argues that *Bowlby* clearly establishes that Chief Randle could not delay including Wrecker Works on the City's rotation list without affording Wrecker Works due process. But *Bowlby* is distinguishable. Whereas the snow-cone operator in *Bowlby* received a permit expressly granting her the right to do business in a specific location,[35] there is no evidence in the record that Wrecker Works had a right to immediate inclusion on the rotation list. Neither the minutes from the Board's May 3 meeting nor the wrecker ordinance gave Chief Randle any indication that he was required to put Wrecker Works on the rotation list without any delay.

Moreover, the Board's vote to put Wrecker Works on the rotation list was a departure from the wrecker ordinance, which did not provide for any Board involvement in determining whether a towing company could be included on the list. As noted, it is questionable whether there was a valid "mutually explicit understanding" under Mississippi law. If such an understanding did exist, its parameters are far from clear—even after discovery—and make no mention of timing. A reasonable law enforcement officer therefore could not be expected to know Wrecker Works had a property interest in immediate inclusion on the rotation list or that a one-month delay in placing Wrecker Works on the list would constitute a deprivation of that property. Given the

---

[32] *Id.* at 218-19.

[33] *Id.* at 220 (quoting *Wells Fargo Armored Serv. Corp. v. Ga. Pub. Serv. Comm'n*, 547 F.2d 938, 941 (5th Cir. 1977)).

[34] *Id.*

[35] *Id.* at 218.

unique facts of this case, Chief Randle's actions did not violate clearly established law. Chief Randle is entitled to qualified immunity.

## III

Wrecker Works contends that the district court erred by granting summary judgment on its state-law claim that Chief Randle maliciously interfered with its business relationships. Wrecker Works asserts that Randle interfered with the agreement between the Board, acting for the City, and Wrecker Works when Randle did not add Wrecker Works to the rotation list immediately.

To establish a claim for tortious interference with business relations, a plaintiff must show:

> (1) The acts were intentional and willful; (2) The acts were calculated to cause damage to the plaintiffs in their lawful business; (3) The acts were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); (4) Actual damage and loss resulted.[36]

Under this conjunctive test, "[i]f any of the factors are not met, there cannot be a finding of tortious inference with business."[37]

Wrecker Works cannot establish that Chief Randle's delay in adding Wrecker Works to the rotation list was "without right or justifiable cause." If the without-right-or-justifiable-cause requirement is not satisfied, any interference with business relations, however intentional, is not, in fact, tortious.[38] For example, a landowner who intentionally blocked a parking lot that he owned because he was annoyed with noise from a neighboring saloon did not *tortiously* interfere with business relations because he acted within his

---

[36] *Biglane v. Under The Hill Corp.*, 949 So. 2d 9, 16 (Miss. 2007) (quoting *MBF Corp. v. Century Bus. Comms., Inc.*, 663 So. 2d 595, 598 (Miss. 1995)).

[37] *Id.*

[38] *Id.*

rights as a property holder.[39]  In this case, Chief Randle did not act outside of the legal rights attached to his position.  Under the original wrecker ordinance, a wrecker service was required to comply with certain requirements that were not met by Wrecker Works.  The Board's vote to place Wrecker Works on the list was not in compliance with this ordinance.  There was at least justifiable cause for the Chief of Police to question the Board's authority.  Under the subsequent ordinance, the Chief of Police was in charge of the process, and the ordinance did not indicate that a delay of three days in placing an approved towing/wrecker service on the list was unreasonable.

*    *    *

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[39] *Id.*