# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 30, 2023

Lyle W. Cayce
Clerk

No. 21-60593

Pie Development, L.L.C.,

*Plaintiff—Appellant*,

*versus*

Pie Insurance Holdings, Incorporated; Pie Insurance Services, Incorporated; Dax Craig; John Swigart,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:19-CV-792

Before Richman, *Chief Judge*, and Elrod and Oldham, *Circuit Judges*.
Per Curiam:*

Pie Development appeals the district court's dismissal of its misappropriation of trade secrets, tortious interference, unjust enrichment, and civil conspiracy claims. Because Pie Development did not sufficiently plead that it took reasonable measures to protect the secrecy of its business plan, and its other claims hinge on the misappropriation, we affirm.

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 21-60593

## I

AmFed National Insurance Company (AmFed) is a workers' compensation insurance provider and a wholly-owned subsidiary of AmFed Holding Company, LLC (AmFed Holding). AmFed signed a nondisclosure agreement (NDA) with Valen Technologies, Inc. (Valen)—a company that consults for insurers—covering the two entities' potential business relationship. Pie Development is an LLC whose only member is AmFed Holding. Billy Roberts, the president of AmFed, directed Greg McLemore to create Pie Development.

The only progress toward creating Pie Development as pled in the complaint was filing a certificate of formation, receiving a D-U-N-S Number from Dun & Bradstreet, creating an email account, and obtaining a placeholder "Pie" application from Apple. Roberts had a breakfast meeting with Dax Craig, the president of Valen, where Roberts explained his plan for an application that "would be named 'Pie'" and would "make purchasing workers' compensation insurance . . . 'as easy as pie.'" "[T]he concept behind Pie is that an employer seeking to obtain a workers' compensation insurance quote would input into the Pie application minimal information consisting only of a few data points." "[U]sing that minimal information, the Pie application would access various available data sources and provide a workers' compensation insurance quote to the potential Pie customer" who could then purchase insurance through the application. The whole process "would only take a few minutes." That information is Pie Development's business plan and its alleged trade secret.

Neither Roberts nor Craig signed the AmFed/Valen NDA, which covered only AmFed and Valen—not AmFed Holding or Pie Development. Neither Pie Development nor Pie Insurance existed when the NDA was signed. Further, the NDA covered information that was, "if disclosed orally, . . . either confirmed thereafter promptly in writing as confidential or

proprietary or [which] should, from the totality of the circumstances, be understood to be confidential or proprietary." The complaint does not allege that at any time during or after the meeting Roberts told the participants that information discussed at the breakfast meeting was confidential or covered under the NDA.

The complaint alleges that Craig disclosed the Pie Development business plan to John Swigart, who created Pie Insurance about a year after the breakfast meeting. Pie Insurance then began to operate and raise capital. The Pie Insurance website explains that the company sells workers' compensation insurance without an agent, can provide "an online quote in 3 minutes," and makes "workers['] comp as easy as pie." Roberts learned of Pie Insurance seventeen months after the breakfast meeting, but waited two years after that to file this suit.

Pie Development's complaint asking for, among other forms of relief, over $65 million in damages, was dismissed without prejudice in a twenty-three-page opinion that explained the deficiencies of the complaint and gave Pie Development thirty days to amend. Instead of amending, Pie Development filed this appeal.

## II

The complaint alleged a misappropriation of trade secrets claim under both the Mississippi Uniform Trade Secrets Act (MUTSA) and the federal Defend Trade Secrets Act (DTSA). "We review de novo a district court's dismissal under Rule 12(b)(6), accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs."[1] To survive

---

[1] *Warren v. Chesapeake Expl., L.L.C.*, 759 F.3d 413, 415 (5th Cir. 2014) (citing *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (en banc)).

such a motion, "heightened fact pleading of specifics" is not required.[2]  A plaintiff only needs to plead "enough facts to state a claim to relief that is plausible on its face" and to "nudg[e] [the plaintiff's] claims across the line from conceivable to plausible."[3]  Information can only be a trade secret under the DTSA if:

> (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.[4]

The MUTSA trade secret definition is substantively identical.[5]

Assuming *arguendo* that Pie Development has sufficiently pled that its business plan could be a trade secret, it did not plead enough facts to illustrate reasonable measures were taken to keep its business plan a secret.  Pie Development argues that the AmFed/Valen NDA illustrates reasonable measures.  The NDA is not a measure taken by "the owner" of this trade secret—Pie Development—at all, much less a reasonable measure.[6]  Pie

---

[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[3] *Id.*

[4] 18 U.S.C. § 1839(3).

[5] *See* Miss. Code Ann. § 75–26–3(d) ("'Trade secret' means information . . . that: (i) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (ii) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.").

[6] 18 U.S.C. § 1839(3); *cf. United States v. Wen Chyu Liu*, 716 F.3d 159, 162 (5th Cir. 2013) (identifying an NDA and restricted access to the information as evidence of efforts to keep the information secret when the company "took extensive physical and legal security precautions to protect its technology and the processes used," including that the very employee alleged to have misappropriated the trade secret signed an NDA promising

No. 21-60593

Development did not exist at the time that NDA was signed, and none of the participants at the breakfast meeting, including Roberts and Craig, were signatories to the NDA.  AmFed, a separate company under the AmFed Holding umbrella, is the one who signed the NDA with Valen.  The NDA was not "reasonable under the circumstances" to protect the Pie business plan when it prohibited assignment and did not mention Pie Development or the Pie application.[7]  The NDA also only covered oral information that was confirmed in writing or understood to be confidential.  There is no allegation in the complaint that the meeting participants understood or were ever told that the meeting or information shared was confidential, proprietary, or subject to the AmFed/Valen NDA.

Further, the complaint alleges that Pie Development learned of the existence of Pie Insurance in 2017 but waited two years without sending any cease-and-desist letter or requesting any preliminary injunctive relief.  Pie Development cannot now assert a claim to all the capital Pie Insurance obtained while Pie Development delayed.  The district court did not err in dismissing this claim.

## III

The tortious interference, unjust enrichment, and civil conspiracy claims likewise fail.  Because Pie Development did not allege enough facts to support its misappropriation of trade secrets claim, there are insufficient allegations for the existence of "unlawful purpose" as a basis for its tortious

---

"not to disclose confidential and trade secret information to third parties," and was reminded of this letter after he retired and before he started his new company).

[7] MISS. CODE ANN. § 75–26–3(d); *see also* 18 U.S.C. § 1839(3).

No. 21-60593

interference claim.[8]  The unjust enrichment claim likewise fails because Pie Development's own complaint alleges that it waited for more than two years without taking any reasonable measures to protect its trade secrets.  The complaint thus fails to state sufficient allegations that Pie Development is entitled to repayment in "equity and good conscience," which is a necessary condition to prevail under the unjust enrichment claim.[9]  Finally, because Pie Development did not adequately plead either misappropriation of trade secrets or unjust enrichment, there is no underlying tort or wrong on which its claim of civil conspiracy can rest.[10]  We affirm the dismissal of each claim.

## IV

Pie Development's request for an opportunity to file an amended complaint is denied.  The district court gave Pie Development thirty days to amend its complaint when granting the motion to dismiss.  The district court's twenty-three-page opinion provided a roadmap for curing the deficiencies in Pie Development's complaint and surviving a motion to dismiss.  Pie Development declined to amend, instead filing this appeal, and now asks us to grant leave to amend.  "A party who neglects to ask the district

---

[8] *MBF Corp. v. Century Bus. Commc'ns, Inc., A Subsidiary of Century Tel. Enters., Inc.*, 663 So. 2d 595, 598 (Miss. 1995) (quoting *Nichols v. Tri-State Brick & Tile Co.*, 608 So. 2d 324, 328 (Miss. 1992)).

[9] *Willis v. Rehab Sols., PLLC*, 82 So. 3d 583, 588 (Miss. 2012) (citing *Union Nat'l Life Ins. Co. v. Crosby*, 870 So. 2d 1175, 1180 (Miss. 2004)).

[10] *See Rex Distrib. Co., Inc. v. Anheuser-busch, LLC*, 271 So. 3d 445, 455 (Miss. 2019).

No. 21-60593

court for leave to amend cannot expect to receive such a dispensation from the court of appeals."[11]  For this reason, we deny the request to amend.

\* \* \*

Accordingly, the judgment of the district court is AFFIRMED.

---

[11] *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) (citing *Vega–Rodriguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 183-84 (1st Cir. 1997)); *see also Badeaux v. BP Expl. & Prod., Inc.*, 790 F. App'x 618, 621 (5th Cir. 2019) (per curiam) (unpublished) ("Badeaux never moved to amend his complaint in the district court. . . . And Badeaux has not indicated 'specifically how he would amend his complaint to overcome the 12(b)(6) dismissal.'  To the contrary, Badeaux has repeatedly 'declare[d] the adequacy of his complaint,' both in his response to the motion to dismiss and in his brief to this court.  For these reasons, we deny Badeaux's request [for remand with leave to amend]." (citations omitted)).